**Electronically Filed
Supreme Court
SCWC-29340
16-MAY-2012
08:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

BONNIE MACLEOD KAKINAMI, Respondent/Plaintiff-Appellee,

vs.

AARON K.H. KAKINAMI, Petitioner/Defendant-Appellant.

NO. SCWC-29340

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 29340; FC-D NO. 06-1-0040)

MAY 16, 2012

RECKTENWALD, C.J., NAKAYAMA, AND DUFFY, JJ.;
WITH ACOBA, J., CONCURRING AND DISSENTING
SEPARATELY, WITH WHOM MCKENNA, J., JOINS

OPINION OF THE COURT BY RECKTENWALD, C.J.

Aaron Kakinami challenges the Family Court of the Fifth Circuit's Supplemental Divorce Decree, on the ground that the family court erred in not awarding him a share of Bonnie Kakinami's Marital Separate Property.[1]  Aaron also argues that the family court improperly modified the Supplemental Divorce Decree after he filed his Notice of Appeal by compelling him to pay Bonnie a net share of her interest in the marital residence

---

[1]     The Honorable Calvin K. Murashige presided.

by a certain date.

Briefly stated, Aaron and Bonnie were married in 1980. In 2006 Bonnie filed a complaint for divorce, alleging the marriage was irretrievably broken. The family court subsequently filed a Decree Granting Absolute Divorce, but reserving property division. A one-day trial was later held on the division of the parties' marital estate. At trial, Bonnie argued that a gift and several inheritances that she received during the marriage were Marital Separate Property, and thus, excluded from the marital estate and not subject to division. Aaron argued that the gift and inheritances were Marital Partnership Property and subject to division. On October 7, 2008, the family court filed a Supplemental Divorce Decree, in which it classified the gift and inheritances that Bonnie received during the marriage as Marital Separate Property and awarded Bonnie one hundred percent of that property.

On October 10, 2008, Aaron filed a notice of appeal, appealing from, inter alia, the family court's October 7, 2008 Supplemental Divorce Decree. While Aaron's appeal was pending, Bonnie filed a Motion for Order Compelling Aaron to List the Marital Residence for Sale. On February 3, 2009, the family court filed its order compelling Aaron to pay Bonnie her net share of the marital residence by February 27, 2009.

On appeal to the ICA, Aaron argued, inter alia, that the family court erred in awarding Bonnie one hundred percent of

the gift and inheritances as Marital Separate Property.  Aaron also argued that the family court's order compelling Aaron to pay Bonnie her share of the marital residence improperly modified the property distribution ordered in the Supplemental Divorce Decree, because Aaron's notice of appeal allegedly divested the family court of jurisdiction.  The ICA affirmed.  Kakinami v. Kakinami, No. 29340, 2011 WL 1836718, at *4 (Haw. Ct. App. May 11, 2011) (SDO).  With regard to Bonnie's gift and inheritance-funded accounts, the ICA, citing Schiller v. Schiller, 120 Hawaiʻi 283, 205 P.3d 548 (App. 2009), noted that the family court has the "authority to award Marital Separate Property to a non-owning spouse[,]" Kakinami, 2011 WL 1836718, at *2, but held that the family court did not abuse its discretion by failing to do so in this case.  Id.  The ICA further held that the family court had jurisdiction to enter the order compelling Aaron to pay Bonnie her share of the marital residence because the order enforced, rather than modified, the Supplemental Divorce Decree.  Id. at *4.

In his application, Aaron raises the following questions:

> A.  Did the [ICA] commit grave error when it affirmed the [family] court's conclusion of law, that no "Marital Separate Property" or appreciation on that property can ever be awarded to a non-owning spouse[?]
>
> B.  Did the [ICA] commit grave error when it affirmed post-decree orders issued by the family court, without jurisdiction, which modified property division in the absence of a timely motion under [Hawaiʻi Family Court Rules (HFCR)] Rule 59?

-3-

We hold that the ICA erred in stating that the family court has the "authority to award Marital Separate Property to a non-owning spouse" under Schiller. Kakinami, 2011 WL 1836718, at *2. As explained further below, we hold that Marital Separate Property remains non-divisible under the framework first set forth in Hussey v. Hussey, 77 Hawai'i 202, 881 P.2d 1270 (App. 1994), overruled on other grounds by State v. Gonsales, 91 Hawai'i 446, 984 P.2d 1272 (App. 1999). That framework is consistent with partnership principles adopted by this court, and provides parties a practical means of segregating a specific type of asset acquired during the marriage, while still permitting the family court to divide the parties' estate in a "just and equitable" manner pursuant to Hawai'i Revised Statutes (HRS) § 580-47.

We further hold that the family court did not abuse its discretion when it adhered to the Partnership Model of property division in dividing the parties' Marital Partnership Property, because the existence of an inheritance, without more, does not mandate deviation. We also hold that the family court had jurisdiction when it issued its February 3, 2009 post-decree order because the order enforced a preexisting obligation. Accordingly, we affirm the judgment of the ICA.

## I. Background

The following factual background is taken from the record on appeal.

Aaron and Bonnie were married on June 14, 1980. On March 9, 2006, Bonnie filed a complaint for divorce, alleging the marriage was irretrievably broken.[2] In his answer, Aaron agreed that the marriage was irretrievably broken. The divorce involved the division of the parties' nearly two million dollar estate.

## A. Bifurcated Divorce Decree

On September 27, 2007, the family court granted Bonnie's request to bifurcate the divorce proceeding. Thereafter, the family court filed a Decree Granting Absolute Divorce (Bifurcated Divorce Decree) on October 1, 2007.[3] Although the primary purpose of the decree was to dissolve the marriage and reserve the division of property and debts for trial, the family court awarded certain assets. The decree, inter alia, awarded the marital residence to Aaron, provided that he buy out Bonnie's one-half interest. The decree stated in pertinent part, "[Aaron] shall forthwith deposit in escrow an amount that equals one-half of the fair market value of the marital residence minus one-half the current mortgage debt."

---

[2] The family court, sua sponte, entered a pretrial order against waste or transfer of property other than for usual and ordinary living expenses on March 10, 2006.

[3] On January 25, 2008, Aaron appealed the family court's bifurcation order and the Bifurcated Divorce Decree. On February 28, 2011, the ICA affirmed the family court's bifurcation order in Kakinami v. Kakinami, No. 28977, 2011 WL 682262, at *1 (Haw. Ct. App. Feb. 28, 2011). On June 27, 2011, Aaron filed an application for certiorari from the ICA decision in that appeal. After granting certiorari, this court concluded that "the ICA was correct to affirm the family court's entry of the October 1, 2007 decree granting absolute divorce." Kakinami v. Kakinami, 125 Hawaiʻi 308, 317, 260 P.3d 1126, 1135 (2011).

**B.    Trial on Division of Marital Estate**

After extensive discovery by both parties, a one-day trial was held on July 25, 2008 on the division of the parties' marital estate.  The parties testified in relevant part as follows.

**1.  Bonnie's Testimony**

Bonnie, a 59-year old teacher, testified that she received a gift and several inheritances from two family members during the course of her marriage.  Specifically, Bonnie testified that in 1992, she received a $10,000 gift from her stepmother, Violet McLeod, and placed it in a newly-opened account at Owens Mortgage Investment (Owens account).  Bonnie placed Aaron's name on the Owens account when it was opened, but testified that she did not intend to make a gift of that money to Aaron.  That same year, Bonnie also received a $50,000 inheritance from her aunt's estate, which she put in the Owens account.  Bonnie indicated that the 1992 gift and inheritance were intended for her, and not for both her and Aaron.  Bonnie testified that in 1995, she removed Aaron's name from the Owens account.  Bonnie further testified that while Aaron's name was on the account between 1992-1995, Aaron did not contribute any funds to that account, nor did he do so at any other time.  Bonnie recalled that after 1995, she withdrew money from the Owens account to pay for education and household expenses.

Bonnie testified that after 1995, she received an

inheritance from her stepmother that was distributed to her in approximately the following amounts: $33,334, $308,000, $500,000, and $3,333. Bonnie testified that these monies were placed in either the Owens account or a Smith Barney account. Bonnie further testified that neither she nor Aaron have ever contributed any additional money to these accounts; she had other people managing these accounts; and Aaron knew that the money in these accounts was Bonnie's.

Bonnie testified that during the divorce proceedings, she made some withdrawals from her accounts to pay for "regular living expenses[,]" "attorneys' fees[,]" and a number of trips. Bonnie indicated that during her marriage, it was "usual and customary" for her to take trips and to pay for her children's travel expenses.

## 2. Aaron's Testimony

Aaron, a 56-year old attorney, testified that sometime in 2001, his law practice began to decline and he suffered from health issues. Aaron was aware that in 2002, Bonnie inherited money, but he indicated that Bonnie did not express to him verbally or in writing that she intended that the money be kept her sole property, that the money was not to be used for marital purposes, or that the money was not to be managed or touched during the marriage. Aaron then testified about how he believed the money in the parties' accounts should be divided in light of his characterization of each asset. With regard to Bonnie's

"inherited money accounts," Aaron testified that Bonnie would get her basis back, but the appreciation, had there been any, would be split fifty-fifty.

Aaron also testified about withdrawals that Bonnie made from her inheritance-funded accounts during the divorce proceedings, which Aaron claimed were in contemplation of divorce. According to Aaron, these withdrawals roughly amounted to $400,000. Aaron testified that Bonnie "should be credited with having received [$]400,000." When Aaron attempted to point to his medical condition as a basis for equalization payments, Bonnie's counsel objected, stating, "If he was going to put his condition in evidence, [she] should have been permitted to get his medical records." The family court sustained the objection.

At the court's direction, the parties submitted their closing arguments in writing. The parties' closing arguments centered around the following main issues: (1) whether Bonnie's gift and inheritances were Marital Separate Property or Marital Partnership Property;[4] (2) whether the Marital Partnership

---

[4]     Under Hussey, marital property is divided into three categories: (1) Premarital Separate Property; (2) Marital Separate Property; and (3) Marital Partnership Property. 77 Hawaiʻi at 206-07, 881 P.2d at 1274-75. Upon marriage, Premarital Separate Property becomes either Marital Separate Property or Marital Partnership Property. Id. at 206, 881 P.2d at 1275. Marital Separate Property includes: (1) property covered by a valid premarital agreement; (2) property covered by a valid contract; and (3) property that was (a) acquired through gifts and inheritances during the marriage; (b) expressly classified as separate property; and (c) maintained and funded through non-partnership assets or efforts. Id. at 206-07, 881 P.2d at 1274-75.
    Additionally, under Hussey, Marital Separate Property is not subject to division. Id. at 207, 881 P.2d at 1275. Furthermore, any property that does not fit within one of the three types of Marital Separate Property is Marital Partnership Property that is divided pursuant to the Partnership Model. Id.
(continued...)

-8-

Property should be awarded one-half to each spouse; (3) whether there were any valid and relevant circumstances (VARCs) for equitable deviation; and (4) whether Aaron's pretrial motions regarding Bonnie's alleged violation of the pretrial order against waste should be granted.

In his closing arguments, Aaron argued that: (1) the marital estate was entirely comprised of Marital Partnership Property; and (2) Bonnie was "fiscally irresponsible" during the divorce and improperly made "withdrawals in contemplation of divorce." With regard to the division of the marital estate, Aaron specifically argued that Bonnie's inheritance-funded accounts were Marital Partnership Property, not Marital Separate Property, because they were not "expressly classified" as Bonnie's separate property or "maintained by [themselves]" as required under Hussey. Additionally, Aaron argued that Bonnie exhibited fiscal irresponsibility and violated the pretrial order when she made sizable withdrawals from her inheritance-funded accounts during the divorce proceedings. Accordingly, Aaron contended that Bonnie should be equitably charged with having received the dollar value of the reduction.

In her closing arguments, Bonnie maintained that: (1)

---

[4](...continued)
Under the Partnership Model, absent valid and relevant considerations (VARCs), each partner is generally awarded his or her capital contribution, while the appreciation is split fifty-fifty. See Jackson v. Jackson, 84 Hawai‘i 319, 332, 933 P.2d 1353, 1366 (1997). VARCs permit the family court to equitably deviate from the Partnership Model in dividing the parties' Marital Partnership Property. See Jackson, 84 Hawai‘i at 332-33, 933 P.2d 1366-67.

her inheritance-funded accounts were Marital Separate Property under Hussey; (2) the Marital Partnership Property should be awarded one-half to each spouse pursuant to the Partnership Model; (3) equitable deviation from the Partnership Model was not warranted because Aaron is a licensed attorney with marketable skills; and (4) the family court should deny Aaron's motions because Bonnie's expenditures were justified by the high cost of litigation and her necessary travel expenses.

## C.    Supplemental Divorce Decree

On October 7, 2008, the family court filed a Supplemental Divorce Decree Re Division of Assets and Debts After Entry of Bifurcated Divorce Judgment (Supplemental Divorce Decree), in which the court divided Aaron and Bonnie's property into Marital Partnership Property and Marital Separate Property and distributed the assets accordingly. The court concluded, inter alia, that the following assets were Marital Partnership Property: (1) the marital residence; and (2) the $10,000 gift and $50,000 inheritance that Bonnie received in 1992. With regard to these assets, the court stated in pertinent part:

> 1. Marital residence. The divorce decree entered on October 1, 2007 awarded the marital residence at Malino Road, Kauai, Hawaii to [Aaron] as his sole and separate property. The parties were each awarded one-half of the equity in the marital residence. The mortgage on the marital residence is $57,163. The total equity in the marital residence as of June 30, 2008 was $477,836. Each party is therefore entitled to $238,918 as his/her share of the equity in the home. [Aaron] is permitted to offset [Bonnie's] share of the equity in the Malino Road property with the share of the marital partnership property to which he is entitled. Should [Aaron] decide to sell the Malino

Road property, he shall be solely responsible for the costs of sale. [Bonnie] shall timely execute all documents necessary to effect the property division.

2. <u>OMIF account number 01-2999</u>. The $10,000 gift and $50,000 inheritance which [Bonnie] received in 1992 are marital partnership assets. The $33,334 received by [Bonnie] in 2002 and deposited in OMIF account #01-2999 account [sic] is separate marital property as further described below in paragraph B(6). This account's value on June 30, 2008 was $167,102. [Bonnie] is awarded $60,000 as her category 3 marital partnership property. The appreciation on the $60,000 is category 4 marital partnership property and said appreciation is awarded ½ to each party. The appreciation on the $60,000 is $58,810. [Bonnie] and [Aaron] are each entitled to ½ of $58,810 or $29,405. Therefore [Bonnie] is awarded $60,000 plus $29,405 and [Aaron] is awarded $29,405.

The family court further concluded that the following gift and inheritances received by Bonnie in 2002 constituted Marital Separate Property and awarded her "one hundred percent", "along with any appreciation therein":

1. Gift of $33,334 from Violet McLeod[.]
2. Central Coast Paytel partnership from Violet McLeod valued at $3,333[.]
3. Violet McLeod's IRA account in OMIF ([Bonnie] as beneficiary) presently valued at $152,588[.]
4. Smith Barney account # 574-6B632 Traditional Inherited IRA "Bonnie Kakinami CGM IRA Beneficiary Custodian", valued at $137,946.08[.]
5. All assets, account numbers 104 045881 and 104 045882 titled in [Bonnie's] individual name managed by Morgan Stanley presently valued at $483,255.
6. OMIF account number 01-2999. The balance of account number 01-2999 after deduction of [Bonnie's] $60,000 capital contribution plus $58,810 appreciation on that amount (total $118,810, pursuant to paragraph A(2) above) is marital separate property. [Bonnie] is awarded the balance of this account.

The family court also indicated that it "shall have continuing jurisdiction over the parties and their property to enforce and implement the provisions of this decree."

**C. Motion for Order Compelling Aaron to List the Marital Residence for Sale**

On October 10, 2008, Aaron filed a notice of appeal,[5] appealing from, inter alia, the family court's October 7, 2008 Supplemental Divorce Decree.

On December 1, 2008, while Aaron's appeal was pending, Bonnie filed a Motion for Order Compelling Aaron to List the Marital Residence for Sale. In her motion, Bonnie requested that the court order Aaron to immediately: (1) list the marital residence for sale; (2) pay Bonnie $243,982, Bonnie's share of the marital residence; or (3) offset Bonnie's share of the marital residence against Aaron's other awards and pay her $83,715 equalization payment. Aaron opposed the motion, primarily arguing that his appeal from the Supplemental Divorce Decree divested the family court of jurisdiction to hear Bonnie's motion to compel.

On December 12, 2008, the family court held a hearing on the motion. The family court orally ruled that Aaron was to pay Bonnie her share of the equity in the marital residence, after accounting for offsets in the division of the other Marital Partnership Property, on or before February 27, 2009. On

---

[5] During the course of the proceedings, Aaron filed a number of appeals to the ICA from various family court orders. A number of appeals were consolidated into this appeal. While the ICA did not address every issue that Aaron raised, the only orders that Aaron appears to challenge further are the family court's February 3, 2009 order on Bonnie's Motion to Compel Defendant to List Marital Residence for Sale, and its February 25, 2009 order denying Aaron's Motion to Compel Compliance with Qualified Domestic Relations Orders (QDROs). Accordingly, Aaron's challenges to other family court orders are not discussed further.

February 3, 2009, the family court filed its Order on Plaintiff's Motion to Compel Defendant to List Marital Residence for Sale. The order stated, inter alia, that Aaron was "not required to list the marital residence [] for sale[,]" but imposed a deadline, February 27, 2009, by which time Aaron was to pay Bonnie the net share of her interest in the marital residence after the appropriate set-off, which amounted to $83,715. Aaron also appealed from this order on February 24, 2009. Aaron requested findings for this order, but without explanation, the family court apparently did not provide any.

On April 6, 2009, the family court issued the following relevant findings of fact (FOF) and conclusions of law (COL) related to the October 7, 2008 Supplemental Divorce Decree:

### Findings of Fact

. . . .
14. At the August 27, 2007 hearing the [c]ourt made an award of certain assets of the parties, including an award of the Marital Residence to [Aaron]. . . .
15. The court ordered that [Aaron] deposit [Bonnie's] share of the equity in the residence by December 1, 2007.
16. The court reserved further issues of division of property and division of debt for trial, set for December 7, 2007.
. . . .
20. By January 18, 2008 [Aaron] had not deposited [Bonnie's] share of the equity in the Marital Residence as ordered at the August 27, 2007 hearing, and [Bonnie] moved for enforcement of the order.
21. [Bonnie's] motion was denied, and the matter of payment by [Aaron] of her share of the marital residence was left as an issue for the trial.
. . . .
33. The court finds that [Bonnie] did not withdraw marital funds in contemplation of divorce.
34. The parties were married on June 14, 1980 and separated in September, 2006.
. . . .
36. [Bonnie] is 60 years old.
37. [Bonnie] is an elementary school teacher on the

island of Kauai, and has been a teacher since 1987.

38. [Aaron] is 56 years old. [Aaron] is an attorney who has been licensed to practice law in the state of Hawaii since 1979. In 2005, for the second time in his career, [Aaron] opened a private practice as a sole practitioner.

39. At DOCOEPOT [Aaron] maintained an active law practice on the island of Kauai. [Aaron] retained staff, has and timely pays all of his monthly expenses connected with his law practice.

. . . .

43. The parties purchased a home ("Marital Residence" or "Malino Road") in 1987. Neither party made a capital contribution claim as to the marital residence.

44. During pre-trial proceedings[,] [Bonnie] moved the court for an order allowing her to purchase the Marital Residence. . . .

45. [Aaron] objected to [Bonnie's] motion and requested leave to buy out [Bonnie's] ½ interest. [Aaron] submitted proof that, with the assistance of his parents, he would qualify for a refinance of the loan so as to be able to purchase [Bonnie's] ½ interest.

46. The court ordered the house sold and the equity divided equally between the parties.

47. Since [Aaron] wished to purchase the Marital Residence, [Bonnie] filed a motion for reconsideration (April 18, 2007) of the court's order that the house be sold. Instead of selling the Marital Residence and incurring the costs of sale, such as broker's fees, [Bonnie] was willing to sell her ½ interest in the residence to [Aaron], provided the [c]ourt lifted the pretrial order to allow her to purchase a new home.

48. The court granted [Bonnie's] motion for reconsideration[.] . . .

49. [Aaron] was awarded the Marital Residence, subject to his placing in escrow by December 1, 2007, [Bonnie's] ½ share of the equity in the Marital Residence (DOCOEPOT total equity $477,836)[.]

50. [Aaron] did not place [Bonnie's] share of the equity in an escrow account as ordered.

51. Before trial and at DOCOEPOT [Aaron] informed the court that he was not financially able to purchase [Bonnie's] ½ interest in the marital estate.

. . . .

56. In 1992 [Bonnie] received a $10,000 gift from her stepmother, Violet McCleod, and a $50,000 inheritance from her aunt Esther Dominguez.

57. The total of the gifts, $60,000, was deposited in a jointly opened and jointly titled Owens Mortgage (OMIF) account #01-2999.

58. The $60,000 principal remained jointly titled from 1992 to 1995. No marital property or income was used to fund this account from inception through DOCOEPOT.

59. In 1995 by agreement of both parties, [Aaron] was removed from title on the OMIF #01-2999 account and [Bonnie] became the sole titleholder.

60. In 2002, [Bonnie] received an inheritance of

-14-

$33,334 from her Stepmother. [Bonnie] deposited that amount in the OMIF #01-2999 account, titled in her sole name. (DOCOEPOT value $167,102)

61. [Bonnie] expressly classified the $33,334 inheritance as her sole separate property.

62. [Aaron] testified that he was not entitled to the $33,334 inheritance.

63. No marital income or property was used to fund the #OMIF [sic] account #01-2999.

64. In 2002, [Bonnie] received other inherited funds in the following amounts:

    a) $5,500 in CalPlans Limited Partnership
    b) $3,333 Central Coast Paytel Limited Partnership
    c) $308,116 cash
    d) $539,000 cash

. . . .

68. In 2002 [Bonnie] deposited her $33,334 inheritance in OMIF account #01-2999 then titled solely in her name.

. . . .

76. The Smith Barney accounts, and subsequently the Morgan Stanley accounts were maintained by sources other than either one of the parties.

77. Other than the initial gifts of $10,000 and $50,000 received by [Bonnie] and placed in a joint account with [Aaron] from 1992 to 1995, and the Calplans River Vineyard inheritance which was gifted one-half to [Aaron], [Bonnie] expressly classified the inherited assets deposited in Smith Barney as her separate property.

. . . .

80. [Bonnie] used a portion of her inherited funds to pay for the parties' sons' post high school educational expenses and a repair on the Marital Residence.

. . . .

83. [Bonnie's] inheritances were maintained by themselves with the assistance of [Bonnie's] investment advisor.

84. No marital partnership property was used to maintain the inheritance-funded accounts.

. . . .

103. [Bonnie] expended certain funds during the divorce proceedings.

104. The funds were used to pay the usual customary household and living expenses[.]

. . . .

### Conclusions of Law

. . . .

2. The $10,000 and $50,000 gifts to [Bonnie] during the marriage are Category 3 marital partnership property which are returned to [Bonnie] as her sole and separate property.

3. The appreciation on the $10,000 and $50,000 gifts is Category 4 property, which, absent valid or relevant considerations is awarded ½ to each party.

4. There are no valid and relevant considerations sufficient for the court to deviate from the division of the $60,000 inheritance.

5.  [Aaron] is entitled to receive one half of the appreciation on the $60,000 gift to June 30, 2008.

6.  [Bonnie] had the burden of proof by a preponderance of the evidence that certain property acquired during the marriage was marital separate property.

7.  Marital Separate Property (MSP) is that property [was] (a) acquired by Plaintiff during the marriage by gift or inheritance, b) expressly classified by the Plaintiff-owner as her separate property, and c) after acquisition, was maintained by [itself] and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.  [Hussey, 77 Hawaiʻi at 207, 881 P.2d at 1275].

8.  [Bonnie] met her burden of proof by a preponderance of the evidence that the following assets are MSP:

 $33,334 inheritance from Stepmother
 $308,116 inheritance from Stepmother (partially used to fund [Bonnie's] OMIF IRA account)
 $539,000 inheritance from Stepmother
 $3,333 inheritance from Stepmother

9.  [Aaron] presented no credible evidence that other than the $60,000 gifts and their appreciation, received in 1992 and the CalPlans Limited Partnership received in 2002 [Bonnie's] inherited assets were Marital Partnership Property (MPP).

10.  MSP is awarded 100% to the owner-spouse and 0% to the non-owner spouse.

11.  [Bonnie] is therefore entitled to receive as her sole and separate property, those assets described in paragraph 8 immediately above, and an appreciation thereon.

12.  [Bonnie] is also entitled to her $60,000 capital contribution to the OMIF #-1-2999 account as Category 3 of MPP.  Any appreciation on her $60,000 capital contribution is Category 4.  [Aaron] is entitled to one-half the appreciation of [Bonnie's] $60,000.

13.  The Calplans River Limited Partnership is awarded to [Bonnie] as her sole and separate property subject to her buyout of [Aaron's] ½ interest.

14.  The parties' retirement assets are marital partnership property and each party shall receive his/her respective shares as follows:

 a) [Bonnie's] ERS State of Hawaii-per the [Linson v. Linson, 1 Haw. App. 272, 618 P.2d 748 (App. 1980)] formula.
 b) [Bonnie's] ING/State of Hawaii Island Savings Plan, per the Linson formula
 c) [Aaron's] ING/State of Hawaii Island Savings Plan, per the Linson formula
 d) [Bonnie's] AXA annuity ½ to each party
 e) [Bonnie's] ING Reliastar annuity, ½ to each party
 f) [Aaron's] KCFCU IRA, ½ to each party

. . . .

17.  [Aaron] shall forthwith refinance the debt on the Marital Residence or forthwith list it for sale. [Bonnie's] sole obligation regarding the Malino Road

-16-

> property is to timely execute necessary documents to
> effect the property division.

## D.   ICA Appeal

In his Opening Brief filed on May 11, 2009, Aaron argued that the family court erred in: (1) awarding Bonnie the 2002 inheritance funded-accounts as Marital Separate Property; (2) failing to find that Bonnie dissipated marital assets after the court's pretrial order prohibited such conduct;[6] and (3) entering an order purportedly modifying property distribution after Aaron's Notice of Appeal allegedly divested the family court of jurisdiction.  As a preliminary matter, Aaron cast doubt on the Marital Separate Property concept, alleging that Hussey "cite[d] no precedent for this exception" to the family court's authority to equitably divide all property, and arguing that the exception has not been "applied" in any subsequent published opinion and this court "has never reviewed or adopted this exception to the Partnership Model."  Aaron then argued that Bonnie's investment accounts were not Marital Separate Property because Bonnie failed to expressly classify them as such during the marriage and actively managed and controlled the accounts. Aaron further argued that Bonnie dissipated over $400,000 in marital assets.  Finally, Aaron argued that his notice of appeal divested the family court of jurisdiction to modify the Supplemental Divorce Decree and thus the family court abused its

---

[6]     This issue is not raised in Aaron's application.

-17-

discretion in entering its post-decree order compelling Aaron to pay Bonnie.

In her Answering Brief, Bonnie argued, inter alia, that the family court did not err in: (1) deciding that most of the assets that Bonnie received by gift or inheritance were Marital Separate Property and awarding those assets to Bonnie; (2) rejecting Aaron's contention that Bonnie "wasted" Marital Partnership Property during the divorce proceedings; and (3) entering the post-decree order.

In his Reply Brief, Aaron cited Schiller for the proposition that the family court may award Marital Separate Property to the non-owning spouse. Aaron asserted that Hussey was overruled in Schiller and that the "[Marital Separate Property] concept no longer serves any useful purpose in property distribution[.]"

In its SDO, the ICA held, inter alia, that the family court did not abuse its discretion in awarding all of Bonnie's Marital Separate Property to her or following the Marital Partnership model. Kakinami, 2011 WL 1836718, at *2. The ICA further held that the family court did not err in failing to find that Bonnie dissipated marital assets. Id. at *3. The ICA also held that the family court had jurisdiction to issue the February 3, 2009 post-decree order. Id. at *4. Citing Schiller, 120 Hawaiʻi at 310-12, 205 P.3d at 575-77, the ICA acknowledged the family court's "authority to award Marital Separate Property

to a non-owning spouse[,]" but held that the family court did not abuse its discretion by failing to do so in this case. Id. at *2. As for the allegation of dissipation, the ICA held that the family court's finding that Bonnie expended funds for "ordinary and customary living expenses was supported by substantial evidence." Id. at *2-3. Lastly, the ICA held that the family court did not modify the Supplemental Divorce Decree by imposing a deadline for Aaron to buy out Bonnie's share of the equity in the marital residence. Id. at *3. Rather, the ICA determined that the family court merely enforced a pre-existing obligation that had been set forth in the Bifurcated Divorce Decree and the Supplemental Decree. Id. Accordingly, the ICA affirmed, inter alia, the family court's October 7, 2008 Supplemental Divorce Decree and the February 3, 2009 Order on Plaintiff's Motion to Compel Defendant to List Marital Residence for Sale. Id. at *4. The ICA entered its judgment on July 19, 2011.

On October 18, 2011, Aaron filed the instant application.[7] On November 2, 2011, Bonnie timely filed a response to Aaron's application, and Aaron timely filed a reply.

## II. Standards of Review

### A. Family Court Decisions

---

[7] Aaron simultaneously filed a motion for leave to file the application late based on a "system error" that prevented him from filing on time. Aaron's counsel attached as an exhibit a printout reflecting this "system error." This court granted the motion in an order noting that Aaron's counsel was "prevented from timely filing by a 'technical failure' in the Judiciary Electronic Filing and Service System." (Citing Hawaiʻi Electronic Filing and Service Rules Rule 10 (2010)).

> Generally, the family court possesses wide discretion
> in making its decisions and those decisions will not
> be set aside unless there is a manifest abuse of
> discretion. Thus, we will not disturb the family
> court's decision on appeal unless the family court
> disregarded rules or principles of law or practice to
> the substantial detriment of a party litigant and its
> decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)

(quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23

(2001)).

## B.   Family Court's Findings of Fact and Conclusions of Law

> The family court's FOFs are reviewed on appeal under
> the "clearly erroneous" standard. A FOF is clearly
> erroneous when (1) the record lacks substantial
> evidence to support the finding, or (2) despite
> substantial evidence in support of the finding, the
> appellate court is nonetheless left with a definite
> and firm conviction that a mistake has been made.
> "Substantial evidence" is credible evidence which is
> of sufficient quality and probative value to enable a
> person of reasonable caution to support a conclusion.
>
> On the other hand, the family court's COLs are
> reviewed on appeal de novo, under the right/wrong
> standard. COLs, consequently, are []not binding upon
> an appellate court and are freely reviewable for their
> correctness.

Id. (quoting In re Doe, 95 Hawai'i at 190, 20 P.3d at 623).

## C.   Subject Matter Jurisdiction

"Whether a court possesses subject matter jurisdiction

is a question of law reviewable de novo." In re Doe, 96 Hawai'i

272, 283, 30 P.3d 878, 889 (2001).

### III.   Discussion

## A.   An overview of Hawaii's property division scheme

Aaron contends that the ICA gravely erred when it

"affirmed the [family] court's conclusion of law, that no

'Marital Separate Property' or appreciation on that property can

-20-

ever be awarded to a non-owning spouse." In Hawai'i, "[t]here is no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth HRS § 580-47." Tougas v. Tougas, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994) (citation and ellipses omitted). HRS § 580-47(a) (2006) confers upon the family court wide discretion in dividing marital property and provides that upon granting a divorce, the family court may "make any further orders as shall appear just and equitable":

> . . . (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

HRS § 580-47(a); see Tougas, 76 Hawai'i at 26, 868 P.2d at 444.

In addition to HRS § 580-47, Hawai'i case law has created a framework based on partnership principles that provides further guidance for family courts to use in dividing property upon divorce. Because Aaron's and Bonnie's arguments on appeal relate to this evolving body of case law, a review of the relevant case law follows.

In Gussin v. Gussin, 73 Haw. 470, 473, 836 P.2d 484, 486 (1992), this court examined, inter alia, "the ICA's mandate

that family courts' division and distribution of the estates of parties in divorce proceedings must commence at 'uniform starting points' (USPs)." The UPSs directed the family court to presume certain percentage splits for categories of property that previously had been established in Malek v. Malek, 7 Haw. App. 377, 380-81 n.1, 768 P.2d 243, 246 n.1 (1989). Gussin, 73 Haw. at 474-75, 836 P.2d at 487. This court rejected the concept of USPs, finding them to be "rebuttable presumptions" that "restrict[ed] the family courts' discretion in the equitable division and distribution of parties' estates." Id. at 486, P.2d at 492. This court concluded that "the 'partnership model of marriage' provides the necessary guidance to the family courts in exercising their discretion and to facilitate appellate review." Id. (emphasis added) (footnote omitted). Accordingly, this court held that "USPs, as mandated by the ICA, are violative of HRS § 580-47 because they restrict the family courts' discretion in the equitable division and distribution of parties' estates." Id.

In Tougas, this court again endorsed the "partnership model" as the "appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings." 76 Hawai'i at 28, 868 P.2d at 446. While recognizing that "[t]here is no fixed rule regarding property division other than what is provided in HRS § 580-47," id. at 26, 868 P.2d at 444, this court noted that the family

-22-

court can utilize the following five categories of net market

values (NMVs) as guidance in divorce cases:

> Category 1. The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT [date of the conclusion of the evidentiary part of the trial]
>
> Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouse, or to a third party.
>
> Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.
>
> Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

Id. at 27, 868 P.2d at 445 (citation omitted).

This court further indicated that the NMVs in

Categories 1 and 3 are the parties' "capital contributions," and

pursuant to general partnership law, they are returned to each

spouse. Id. (citation omitted). Categories 2 and 4 are the

"during-the marriage increase in NMVs of the Categories 1 and 3

Properties owned at DOCOEPOT[,]" which similar to partnership

profits, are generally to be shared equally. Id. at 27-28, 868

P.2d at 445-46 (citation omitted). In sum, this court stated,

"if there is no agreement between the husband and wife defining

the respective property interests, partnership principles dictate an equal division of the marital estate where the only facts proved are the marriage itself and the existence of jointly owned property." Id. at 28, 868 P.2d at 446 (quotation marks and citation omitted).

This court then considered whether the family court abused its discretion when it deviated from equal division of a joint business that the parties, Carol Tougas (Carol) and Raymond Tougas (Raymond), owned. Id. at 32, 868 P.2d at 450. Carol's parents had created a partnership as part of their estate plan to provide exclusively for their three children, and had each of their children's spouses sign consent forms, which acknowledged that the partnership was "separate property, inaccessible during a divorce action." Id. at 23, 868 P.2d at 441. A second partnership was formed, but no consent forms were signed. Id. Following trial, the family court determined, inter alia, that Raymond was not entitled to any share of Carol's interest in the two partnerships formed by her parents, but awarded Raymond seventy-five percent of the business that he and Carol operated. Id. at 25, 868 P.2d at 443.

On appeal, Carol argued, inter alia, that she should have been awarded fifty percent of the business she operated with Raymond because she and Raymond had "contributed as equal partners to the formation and operation of [the business]." Id. at 32, 868 P.2d at 450. In response to this argument, this court

-24-

stated:

> [T]he [family] court's actions in distributing the estate are discretionary, based on what the court deems to be just and equitable under the circumstances.  Moreover, because the applicable statute, HRS § 580-47, allows the court to consider the condition of the parties after the divorce, separate property holdings may properly factor into the court's consideration.  This does not mean, however, that [Carol's] partnership interests should offset [Raymond's] interest in the marital estate.  The validation of the spousal consent agreement, which operates as a waiver by [Raymond] of all rights to the partnerships, conclusively establishes the contrary.  The court may, nevertheless, alter alimony, child support, and, as in this case, the ultimate distribution of the marital estate based on the respective separate conditions of the spouses.

Id.

Accordingly, this court upheld the family court's deviation from the equal division of the Tougases' joint property.  Id.

In Hussey, the ICA followed the marital partnership concept, but noted that "Tougas used the terms 'marital estate,' 'marital properties,' 'separate properties,' and 'joint property.'"  77 Hawaiʻi at 206, 881 P.2d at 1274.  Seeking "clarity and precision . . . in the context of the Partnership Model," the ICA recognized three classifications of property, which included in relevant part:

> **Premarital Separate Property**. This was the property owned by each spouse immediately prior to their marriage or cohabitation that was concluded by their marriage. Upon marriage, this property became either Marital Separate Property or Marital Partnership Property.
>
> **Marital Separate Property**. This is the following property owned by one or both of the spouses at the time of the divorce:
>
>> a.  All property that was excluded from the marital partnership by an agreement in

-25-

> conformity with the Hawai'i Uniform Premarital
> Agreement Act (HUPAA), HRS chapter 572D (Supp.
> 1992)[;]
> . . . .
>
> b.  All property that was excluded from the
> marital partnership by a valid contract[;] and
>
> c.  All property that (1) was acquired by the
> spouse-owner during the marriage by gift or
> inheritance, (2) was expressly classified by the
> donee/heir-spouse-owner as his or her separate
> property, and (3) after acquisition, was
> maintained by itself and/or sources other than
> one or both of the spouses and funded by sources
> other than marital partnership income or property.
>
> **Marital Partnership Property**. All property that is not
> Marital Separate Property.

Id. at 206-07, 881 P.2d at 1274-75.

With regard to the distribution of Marital Separate Property and Marital Partnership Property, the ICA further noted in Hussey that

> although Marital Separate Property cannot be used by
> the family court to "offset," [Tougas, 76 Hawai'i at
> 32], 868 P.2d at 450, the award of Marital Partnership
> Property to the other spouse, it can be used by the
> family court to "alter . . . the ultimate distribution
> of [Marital Partnership Property] based on the
> respective separate conditions of the spouses."  [Id.]
> In other words, Marital Separate Property is property
> that has been validly excluded from the marital
> partnership.  Although the family court may allow
> Marital Separate Property to reasonably influence the
> division and distribution of Marital Partnership
> Property, it cannot award any Marital Separate
> Property to the non-owner spouse. Consequently, the
> five categories of [net market values] listed in
> Tougas, 76 Hawai'i at 27, 868 P.2d at 445, apply only
> to Marital Partnership Property, not to Marital
> Separate Property.

Id. at 207, 881 P.2d at 1275 (emphasis added).

Shortly after Hussey, the ICA decided Markham v. Markham, 80 Hawai'i 274, 909 P.2d 602 (App. 1996).  At issue in Markham was whether the family court abused its discretion in awarding the wife an equalization award based on the entire value

of a husband's stock in a company called "Maile," which the husband owned. 80 Hawaiʻi at 286, 909 P.2d at 614. The ICA classified the husband's stock in Maile as Category 1 "property separately owned by one spouse on the date of marriage." Id. The ICA indicated that the "appreciated value of said stock would fall into Category 2 as '[t]he increase' in the net market value of property which the owner separately owned from the date of marriage to the date of the trial's conclusion." Id. Recognizing that HRS § 580-47 vests broad discretion in the family court to divide and distribute "separate" property in a "just and equitable manner," the ICA held that "[t]his discretion encompasses the authority to award separate property to the non-owning spouse." Id. (citation omitted).

In Schiller, a 2009 decision, the ICA examined a purported conflict between Markham and Hussey. 120 Hawaiʻi at 310, 205 P.3d at 575. In Schiller, the husband argued that his interest in a company called Garnet was Marital Separate Property, not subject to equitable distribution under Hussey. Id. at 309, 205 P.3d at 574. The husband testified, inter alia, that his interest in Garnet was property acquired during the marriage by "gift"; he characterized Garnet as his "sole and separate property" during the marriage; and he asserted that he had not made any payments for Garnet and was not involved with its management. Id. at 310, 205 P.3d at 575. The ICA concluded that the husband's interest in Garnet was "a gift-hence [the

-27-

husband's] separate property." Id. However, the ICA determined that "there is a contradiction in the case law in this jurisdiction regarding whether a family court can award separate property to a non-owner spouse." Id. The ICA contrasted Markham, which held that the family court's "discretion encompasses the authority to award separate property to the non-owning spouse," Schiller, 120 Hawaiʻi at 310, 205 P.3d at 575 (quoting Markham, 80 Hawaiʻi at 286, 909 P.2d at 614), with Hussey, which held that the family court "cannot award any Marital Separate Property to the non-owner spouse[.]" Id. at 310-11, 205 P.3d at 575-76 (quoting Hussey, 77 Hawaiʻi at 207, 881 P.2d at 1275). The ICA determined that "in Hussey, this court's paraphrasing of the holding in Tougas was inaccurate and that Markham controls this case." Schiller, 120 Hawaiʻi at 311, 205 P.3d at 576. Accordingly, the ICA held in Schiller that under the holding of Markham, "the family court may 'award separate property to the non-owning spouse.'" 120 Hawaiʻi at 312, 205 P.3d at 577 (citation omitted).

**B. The family court correctly concluded that Marital Separate Property cannot be awarded to the non-owner spouse**

In his application, Aaron does not challenge the classification of the gift and certain inheritances that Bonnie received as Marital Separate Property, but rather the family court's alleged lack of authority to award Aaron a portion of this category of property. Aaron argues that the family court

erroneously concluded, as a matter of law, "[Bonnie] is therefore entitled to receive as her sole and separate property those assets described in [COL] 8 [as Marital Separate Property], and any appreciation thereon."  Aaron points out that during the pendency of this appeal, the ICA issued Schiller, in which the ICA stated that "the family court may award separate property to the non-owning spouse."  120 Hawaiʻi at 312, 205 P.3d at 577 (quotation marks and citation omitted).  Aaron argues that the ICA in this case properly recognized that Schiller allows the family court "to award Marital Separate Property to a non-owning spouse," but erred when it nevertheless concluded that "the family court did not abuse [its] discretion by failing to [] award part of Bonnie's Marital Separate Property to Aaron[.]"  Aaron contends that the family court in fact did not exercise any discretion in considering whether it was equitable to award Aaron some of Bonnie's Marital Separate Property, but rather "merely concluded, citing Hussey, that since [Bonnie's inheritances] were [Marital Separate Property], all must go to Bonnie."  Accordingly, Aaron alleges that the ICA committed "grave error" in affirming the family court's division because the family court never exercised any discretion.

At the outset, Bonnie argues that Aaron's argument should be deemed waived, because Aaron failed to argue it before the family court.  Although a review of the record arguably supports Bonnie's contention, the ICA cited Schiller for the

proposition that Marital Separate Property may be awarded to the non-owner spouse, which is inconsistent with the ICA's language in a post-Schiller case, Baker v. Bielski, 124 Hawai'i 455, 460, 248 P.3d 221, 226 (App. 2011) ("Although the family court may allow Marital Separate Property to reasonably influence the division and distribution of Marital Partnership Property, it cannot award any Marital Separate Property to the non-owner spouse.") (emphasis added) (citation omitted).  To resolve this inconsistency in recent ICA decisions, we examine the issue of whether Marital Separate Property can be awarded to the non-owner spouse.  Moreover, although this issue may arguably be deemed waived, we may affirm the orders of the family court on any ground appearing in the record.  Fujimoto v. Au, 95 Hawai'i 116, 169, 19 P.3d 699, 752 (2001) ("[W]e may affirm a judgment of the lower court on any ground in the record that supports affirmance.").  Accordingly, we consider Aaron's contentions on the merits.

As discussed supra, in Schiller, the ICA examined a purported conflict between Markham and Hussey and ultimately held that "[u]nder the holding in Markham, 80 Hawai'i at 286, 909 P.2d at 614, the family court may 'award separate property to the non-owning spouse.'"  120 Hawai'i at 312, 205 P.3d at 577.  The ICA's holding in Schiller, however, was premised on an incorrect analysis when it noted a conflict between Hussey and Markham.  120 Hawai'i at 310, 205 P.3d at 575.  The property at issue in

Markham, which was the husband's stock in a company, was not categorized by either party or the family court as Marital Separate Property.  80 Hawai'i at 286, 909 P.2d at 614.  Indeed, the husband in Markham did not argue that he excluded the property from the marital partnership through a premarital agreement, valid contract, or explicit segregation that met the stringent three-part test in Hussey.  Id.  Accordingly, the stock was Marital Partnership Property subject to division pursuant to the Partnership Model.[8]  See Hussey, 77 Hawai'i at 207, 881 P.2d at 1275 (defining Marital Partnership Property as "[a]ll property that is not Marital Separate Property" and indicating that "the five categories of NMVs listed in [Tougas] apply only to Marital Partnership Property").  Stated differently, the stock was "separately owned" Category 1 property, which is a type of Marital Partnership Property.

Because Markham did not involve Marital Separate

---

[8]      Under the Partnership Model, the ICA in Markham classified the husband's stock under Category 1 as "property separately owned by one spouse on the date of marriage."  80 Hawai'i at 286, 909 P.2d at 614.  The ICA then indicated that the "appreciated value of the said stock would fall in Category 2 as the '[t]he increase' in the net market value of property which the owner separately owned from the date of marriage to the date of the trial's conclusion."  Id. (citation omitted).  As the ICA observed, under the Partnership Model, "absent an agreement to the contrary, each partner is entitled to his or her separately owned property."  Id.  The amount of appreciation in the stock, if any, was unclear, and accordingly, the family court determined that the wife was "entitled to 1/11 of the value of said stock[.]"  Id.  Thus, the issue before the court was "whether the court had the discretion to [] award [the wife] an equalization payment based on the entire value of [the husband's] stock."  Id. (emphasis added).  The ICA held that HRS § 580-47(a) vests the family court with "broad discretion," which "encompasses the authority to award separate property to the non-owning spouse."  Id. (quotation marks and citation omitted).  However, this "separate property" reference did not necessarily conflict with Hussey because under the facts of the case, it referred to "separately owned" Category 1 property.  See Markham, 80 Hawai'i at 286, 909 P.2d at 614.

Property, but rather "separately owned" Category 1 property, which Hussey views as Marital Partnership Property, "a contradiction in the case law" did not exist. Schiller, 120 Hawaiʻi at 310, 205 P.3d at 575. Thus, the ICA's reliance in Schiller on a purported conflict between Markham and Hussey is misplaced. Accordingly, the framework established in Hussey, which distinguishes non-divisible Marital Separate Property from Marital Partnership Property, remains valid.[9]

To be clear, the family court is still vested with the discretion and authority to award separate property to the non-owning spouse. See Hussey, 77 Hawaiʻi at 207, 881 P.2d at 1275 (indicating that all property that is not Marital Separate Property is Marital Partnership Property subject to division); Cassiday v. Cassiday, 68 Haw. 383, 386, 716 P.2d 1133, 1136 (1986) (stating that the trial court is vested with the discretion and authority to award separate property to the non-owning spouse). For example, if a party receives a gift or inheritance during the marriage, but the party does not expressly classify that gift or inheritance as separate property, or uses marital assets or efforts to maintain that gift or inheritance,

---

[9] We emphasize that this third category of Marital Separate Property is distinct from "separate property." Respectfully, the dissent appears to overlook this distinction by interchanging "Marital Separate Property" and "separate property" in responding to points made in this opinion. See dissenting opinion at 34-35. To clarify, Marital Separate Property is a narrow category of "separate property" that, in our view, provides a practical means of segregating certain property from the marital estate, the segregation of which can influence the equitable distribution of the parties' other assets.

then the gift or inheritance would be subject to division as Marital Partnership Property.[10]

Moreover, the framework set forth in Hussey is consistent with HRS § 580-47. HRS § 580-47 directs the family court to "finally divid[e] and distribut[e] the estate of the parties, real, personal, or mixed, whether community, joint or separate" in a "just and equitable" way.[11] In light of this court's adoption of the partnership model, it does not appear that excluding certain categories of property from the marital partnership at the outset is at odds with the statute or this court's prior cases.[12]

Marital Separate Property is property that has been excluded from the marital partnership, and thus, not subject to

---

[10] Respectfully, this court's holding is consistent with Cassiday, because the facts of Cassiday are distinguishable. Dissenting Opinion at 18-20, 20-21 n.7. Specifically, the facts of Cassiday did not indicate that the husband expressly told his spouse that the subject properties would be excluded from the marital estate and be classified as separate property. See id. at 386, 716 P.2d at 1136. Thus, under the Hussey framework, the husband's separate properties in Cassiday would be subject to division.

[11] The legislative history of the predecessor statute to HRS § 580-47 indicates that the equitable distribution scheme was intended to "confer upon the Judge who grants a final decree of divorce the power to make property settlements between the parties of all property, real, personal or mixed, whether held as community, joint or separate property." S. Stand. Comm. Rep. No. 595, in 1955 Senate Journal, at 632. This is the consistent with the plain language of HRS § 580-47. We agree with the dissent that this indicates the family court has the authority to divide the separate property of the parties pursuant to HRS § 580-47. Dissenting opinion at 16. Contrary to the dissent's holding, we believe that Marital Separate Property may be excluded consistent with this scheme.

[12] Citing Jaylo v. Jaylo, 125 Hawaiʻi 369, 375, 262 P.3d 245, 251 (2011), the dissent contends that to the extent that Hussey conflicts with HRS § 580-47, the statute must control. Dissenting opinion at 27. As discussed infra, we do not believe there is a conflict between the Hussey framework and HRS § 580-47 because the family court still maintains discretion to divide the parties' estate in a "just and equitable" manner, with the limitations described herein.

division. Put another way, upon dissolution of the marital partnership, property properly classified as Marital Separate Property remains with the owner of that property. There are three methods of segregating property as Marital Separate Property. The first two methods, which involve either a premarital agreement or valid contract, are recognized by statute.[13] See HRS Chapter 572D; HRS § 572-22. The third method, covering gifts and inheritances acquired during the marriage, requires that the asset was: (1) "expressly classified" as separate property; (2) "maintained by itself and/or sources other than one or both of the spouses"; and (3) "funded by sources other than marital partnership income or property." Hussey, 77 Hawai'i at 207, 881 P.2d at 1275. Although not expressly recognized by statute, this third method is consistent with the Partnership Model of property division that was adopted by our prior cases, because it recognizes that in any partnership, certain assets will not be used for or contribute to the partnership. Furthermore, this third method provides a practical means of segregating assets where written contracts to exclude this type of property may be inappropriate or unfeasible.

The exception recognized in Hussey for certain kinds of gifts and inheritances acquired during a marriage is quite

---

[13] The legislature has essentially approved of excluding these two categories of Marital Separate Property, from the marital estate. See Uniform Premarital Agreement Act, HRS Chapter 572D; HRS § 572-22. Accordingly, these categories of property are not discussed further.

narrow. 77 Hawai'i at 207, 881 P.2d at 1275. The burden is on the owner-spouse to prove that the aforementioned factors were satisfied. Id. Furthermore, although Marital Separate Property cannot be awarded to the non-owner spouse under Hussey, it can influence the division of Marital Partnership Property. Id. Thus, the family court still retains broad discretion to divide property in a "just and equitable" manner. HRS § 580-47. In sum, we view this framework as being consistent with the statute and partnership model, while promoting predictability, and offering a practical mechanism for parties to exclude certain gifts and inheritances acquired during the marriage.

## C. The family court did not abuse its discretion in not deviating from the Partnership Model

Aaron further argues that the ICA erred when it declared that the family court did not abuse its discretion by failing to award Aaron more than one-half of the parties' Marital Partnership Property in light of Bonnie's Marital Separate Property. As a threshold matter, it should be noted that Aaron did not include this issue in his statement of questions presented, and accordingly, it should be disregarded. See Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1(d)(1) ("The application for a writ of certiorari . . . shall contain . . . [a] short and concise statement of the questions presented for decision, set forth in the most general terms possible. . . . Questions not presented according to this paragraph will be

disregarded.") (Emphasis added). In any event, his argument lacks merit.

Aaron argues that Hussey permits deviation from the Marital Partnership Model, and that the family court abused its discretion by failing to consider whether deviation was appropriate in this case. Aaron correctly points out that in Hussey, the ICA stated, "[a]lthough Marital Separate Property cannot be used by the family court to offset . . . the award of Marital Partnership Property to the other spouse, it can be used by the family court to alter the ultimate distribution of Marital Partnership Property based on the respective conditions of the spouses." 77 Hawaiʻi at 207, 881 P.2d at 1275 (internal citations, quotation marks, ellipses, and brackets omitted). As the ICA correctly observed, however, "[t]he mere existence of such an inheritance does not, without more, mandate deviation from the Marital Partnership Model." Kakinami, 2011 WL 1836718, at *2 (emphasis in original); see Tougas, 76 Hawaiʻi at 32, 868 P.2d at 450 (noting that the court "may" alter "the ultimate distribution of the marital estate based on the respective separate conditions of the spouses") (emphasis added).

As the ICA noted, Aaron did not point to anywhere in the record where he argued that Bonnie's Marital Separate Property should be a VARC that justified equitable deviation. Kakinami, 2011 WL 1836718, at *2 n.3. Rather, Aaron argued that Bonnie's inheritance funds should be treated as Marital

Partnership Property, and that Bonnie's alleged "withdrawals in contemplation of divorce or fiscal irresponsibility" should be a VARC. The family court found, and Aaron does not further dispute in his application, that Bonnie did not withdraw funds in contemplation of divorce, but rather used the funds "to pay the usual and customary household and living expenses[.]" Accordingly, the ICA did not err in holding that the family court did not abuse its discretion when it failed to award Aaron more than half of the Marital Partnership Property.

**D. The ICA did not err in concluding that the post-decree order acted to enforce, not modify, the supplemental divorce decree**

Aaron argues that the family court's February 3, 2009 post-decree order was improper because: (1) there was no motion for reconsideration under Hawaiʻi Family Court Rules (HFCR) Rule 59; (2) the family court did not have jurisdiction to modify the Supplemental Divorce Decree after Aaron appealed; and (3) there was no reason for Bonnie's demand. Aaron argues that absent a timely HFCR Rule 59 motion, it was impermissible for the family court to modify the Supplemental Divorce Decree by ordering Aaron to pay an equalization payment to Bonnie within a specified time, i.e., by February 27, 2009. Aaron further argues that the ICA erred when it held that the decree "merely enforced an obligation that had been set forth in both the Bifurcated Divorce Decree and the Supplemental Decree" because the decree involved a modification, not enforcement.

In the instant case, both parties concede that once a party files a notice of appeal, the lower court is generally divested of jurisdiction to proceed further on the matter. Lowther v. Lowther, 99 Hawai'i 569, 578, 57 P.3d 494, 503 (App. 2002). As the ICA recognized, however, the family court retains jurisdiction to enforce its own judgments and decrees. Richter v. Richter, 108 Hawai'i 504, 506-07, 122 P.3d 284, 286-87 (App. 2005). Accordingly, the issue presented before this court is whether the post-decree order enforced the family court's prior order, which would be permissible, or modified the family court's prior order, which would be impermissible.

In Richter, the ICA was presented with a similar issue that essentially involved determining whether a post-decree motion was an enforcement action or a modification action. 108 Hawai'i 504, 122 P.3d 284. The wife filed a post-decree motion seeking an order compelling the division of certain assets after more than a year had elapsed since entry of the divorce decree. Id. at 505-06, 122 P.3d at 285-86. The husband contended that pursuant to HRS § 580-56(d), the family court no longer had jurisdiction because the post-decree motion was filed after the one-year time limit specified in HRS § 580-56(d).[14] Id. at 506-

_____

[14] This court recently held in Riethbrock v. Lange, No. SCWC-28289 (Haw. Mar. 16, 2012), that HRS § 580-56(d) did not limit the family court's jurisdiction to divide the property at issue in that case. In so holding, this court overruled Boulton v. Boulton, 69 Haw. 1, 730 P.2d 338 (1986), which held that HRS § 580-56(d) divested the family court of jurisdiction to divide a former spouse's "personal estate" one year after the filing of a divorce decree reserving property division. Id. at 5, 730 P.2d at 340. However, (continued...)

07, 122 P.3d at 286-87.  The ICA held that the family court
retained jurisdiction to enforce the divorce decree
notwithstanding HRS § 580-56(d) because the post-decree motion
sought enforcement, rather than modification of the divorce
decree.  Id.

A review of the record in the instant case supports the
ICA's conclusion that the imposition of the February 27, 2009
deadline in the family court's order merely enforced an
obligation that had been previously set forth in the Bifurcated
Divorce Decree and Supplemental Divorce Decree.  The Bifurcated
Divorce Decree awarded the marital residence to Aaron, provided
that Aaron "buy out" Bonnie's "one-half interest."  The decree
ordered Aaron to immediately "deposit in escrow an amount that
equals one-half of the fair market value of the marital residence
minus one-half the current mortgage debt."

After the family court entered the Bifurcated Divorce
Decree, Aaron advised the court that he could not buy out
Bonnie's one-half share despite his previous representation that
he could.  In the Supplemental Divorce Decree, the family court
recognized that per the Bifurcated Divorce Decree, each of the
parties was "awarded one-half of the equity in the marital
residence."  The family court determined that "[e]ach party is

---

¹⁴(...continued)
Riethbrock does not affect the holding in Richter that the family court
retains jurisdiction to enforce its decree.  See Richter, 108 Hawaiʻi at 506-
07, 122 P.3d 284 at 286-87.

therefore entitled to $238,918 as his/her share of the equity in the home."  Having previously awarded the marital residence to Aaron subject to a buy out of Bonnie's one-half share, but now aware that Aaron could not afford the buyout, the family court provided Aaron with the following options:  (1) offset Bonnie's share of the equity in the marital residence with his share of the marital partnership property; or (2) sell the marital residence.  The family court also indicated in the Supplemental Divorce Decree that it retained "continuing jurisdiction over the parties and their property to enforce and implement the provisions of this decree."

After the Supplemental Divorce Decree was entered, Aaron did not take any action, and Bonnie did not receive her share of the marital residence to which she was entitled.  While it is true that Aaron's notice of appeal divested the family court of its jurisdiction to modify the Supplemental Decree, the family court retained jurisdiction to enforce its previous orders.  See Richter, 108 Hawai'i at 506-07, 122 P.3d at 286-87.  In the instant case, the family court ordered, in pertinent part:

> [Aaron] shall pay to [Bonnie] her net share of her
> interest in the [marital residence] and her interest
> in [Aaron's] other deposit/retirement accounts after
> [Aaron's] interest in [Bonnie's] retirement accounts,
> deposit accounts and in Caplans have been set-off,
> with payment to be made by February 27, 2009 or the
> establishment of an escrow account by February 27,
> 2009 to effect such payment to [Bonnie] no later than
> March 27, 2009[.]

Aaron argues that the Supplemental Divorce Decree did not require Aaron to take any action with regard to the marital

residence by a certain date, and thus, the February 27, 2009 deadline that appeared in the family court's February 3, 2009 order modified the Supplemental Divorce Decree. Aaron's argument is unpersuasive.[15] Aaron's argument ignores the clear intent of the Supplemental Divorce Decree. The family court provided Aaron with three options. When Aaron informed the court he would be unable to exercise his preferred option (i.e., buyout), and did not act to exercise any of the other options, it was within the court's authority to compel Aaron to fulfill his obligation under the Supplemental Decree, which was to pay Bonnie one-half of the value of the marital residence. Accordingly, the ICA did not err in holding that the family court had jurisdiction to issue the February 3, 2009 post-decree order.[16]

---

[15]    Additionally, Aaron points to reasons why he did not sell the house after the family court entered the Supplemental Divorce Decree, including a turn in the real estate market and Bonnie's lack of immediate need for her share. These arguments are unpersuasive because the family court did not order Aaron to sell the house, and Bonnie's need for her share of the equity in the marital residence is irrelevant to the legal issue before this court.

[16]    Aaron also asks this court to vacate the family court's February 25, 2009 post-decree order that denied Aaron's Motion to Compel Compliance with QDRO(s). Aaron provides no argument regarding this issue. Moreover, this issue was not included in his points of error to the ICA, and was not addressed by the ICA in its SDO. Because Aaron did not preserve this issue at the ICA or present any discernible argument on this point, this issue is deemed waived and will not be addressed further here. See Bitney v. Honolulu Police Dep't, 96 Hawaiʻi 243, 251, 30 P.3d 257, 265 (2001) ("The general rule provides that issues not properly raised on appeal will be deemed to be waived.") (citation, brackets, and internal quotation marks omitted); HRAP Rule 28(b)(4) (requiring that an opening brief contain a "concise statement of the points of error" and providing that "[p]oints not provided in accordance with this section will be disregarded"); HRAP Rule 40.1(d) (requiring that an application for certiorari contain "[a] brief argument with supporting authorities"); In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 277, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position") (internal quotation marks and brackets omitted).

## IV.   Conclusion

Based on the foregoing, we hold that the family court did not abuse its discretion when it adhered to the Partnership Model of property division in the instant case, and awarded the gift and inheritances at issue to Bonnie.  We also hold that the family court had jurisdiction to issue its February 3, 2009 post-decree order.  Accordingly, we affirm the judgment of the ICA.

Peter Van Name Esser for petitioner

Robert M. Harris for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ James E. Duffy, Jr.

