Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000831
25-NOV-2019
03:31 PM

NO. CAAP-16-0000831

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JMH, Plaintiff-Appellee,
v.
JCH, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 11-01-2089)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Fujise and Leonard, JJ.)

This appeal arises out of a divorce between Defendant-Appellant JCH (**Father**) and Plaintiff-Appellee JMH (**Mother**), implicating the dissipation of marital assets and the sharing of expenses for the extracurricular activities of Father's and Mother's two children.  Father appeals from the "Decree Granting Absolute Divorce and Awarding Child Custody" (**Divorce Decree**) entered on November 2, 2016 by the Family Court of the First Circuit (**Family Court**).[1]

On appeal, Father asserts the following points of error:

> *Point of Error One:* Whether the Family Court erred in finding that [Father] dissipated the marital estate, charging him with marital waste, and in awarding [Mother] a credit based on the dissipation of marital assets because the monies expended by [Father] were from accounts that the

---

[1]  The Honorable Na'unanikina'u A. Kamali'i presided.

parties had already agreed in a pre-trial Stipulated Order were his sole and separate property and that there would be no offsets from the bank accounts, and because [Mother] has no legal right to share in any way in [Father's] G.I. Bill benefits since they are not considered marital assets.

. . . .

*Point of Error Two:* Whether the Family Court erred in ordering that [Father] be equally responsible for the children's extracurricular activity expenses because there was insufficient evidence, argument, analysis, or necessary predicate findings to support the decision.

We affirm in part, vacate in part, and remand for further proceedings.

I. **Background**

A. **Facts**

Father and Mother were married on June 5, 1999. At the time that their divorce became final, Father and Mother's children were dependent on their parents for support.

Mother has a Master's Degree, and, at the time of the divorce, operated a care home business, Akamai Adult Residential Care Home, L.L.C., which Father previously jointly owned with her. Mother is also a registered nurse, employed part-time at the Rehabilitation Hospital of the Pacific, Hawai'i Pacific University, and Chaminade University.

Father served in the United States Air Force from March 15, 1988 to April 30, 2008. In 2008, Father was declared legally disabled by the Social Security Administration and the Veterans Administration (**the V.A.**) and has remained unemployed since then. Through his active duty service, Father became eligible for educational assistance through the Post-9/11 Veterans Educational Assistance Act of 2008 (**Post-9/11 GI Bill**), which included payment of school tuition, fees, books, and a monthly housing allowance. Father used his Post-9/11 GI Bill benefits towards earning a graduate degree at Hawai'i Pacific University.[2]

---

[2] Mother's Answering Brief states that Father attended graduate school from January 2014 through November 2015, which Father's Reply Brief does not dispute.

B.    Procedural History

On December 19, 2011, Mother filed a "Complaint for Divorce" against Father.

On September 26, 2014, Mother filed a "Supplemental Position Statement," in which she claimed that she was entitled to $72,655.45 "total credits claimed against the $97,739.03 property division equalization payment owing by her to [Father.]" A portion of this requested credit stemmed from Father's "tuition, rent and supplemental income the Military has been covering" and from a "wasting of assets[.]"

On February 6 and August 13, 2015, the Family Court issued pretrial orders specifying issues in dispute, including expenses for the children's extracurricular activities.

On January 25, 2016, the Family Court entered a "Stipulated Order and Agreement in Contemplation of Divorce" (**1/25/16 Stipulated Order**), which addressed several issues incident to divorce, including child support and the disposition of certain property.  The parties stipulated, in relevant part, that:

> 9.  Bank Accounts.  The parties have no joint bank accounts.  Any and all bank accounts and credit union accounts maintained in the sole and separate name of the [Mother] or [Father] shall become the sole and separate property of the respective party who so maintains the account.  There shall be no offsets for values of sole and separate bank accounts awarded to the parties.

On January 25, 2016, trial commenced.  Trial continued on January 26 and February 9, 2016.

On March 7, 2016, both Mother and Father submitted written closing arguments.  Mother requested that the parties share equally in the extracurricular expenses for the children, namely, costs incurred from bowling, volleyball, dancing, and gymnastics participation.  Mother also claimed marital waste against Father related to (1) "Excessive Traveling" in the amount of $17,641.09, (2) "Wasted Money On Tickets To Sporting Events" in the amount of $9,075.52, (3) "Squandered Money On Computer Games" in the amount of $7,797.12, and (4) "Unaccounted GI Bill Income" in the amount of $70,495.00.  The GI Bill income was

calculated based on the $3,065.00 monthly living stipend Father received, multiplied by the twenty-three months during which he was in graduate school.

On September 20, 2016, the Family Court entered its "Decision and Order re Trial." In its Order, the Family Court, *inter alia*, apportioned fees for extracurricular activities equally between the parties and awarded a credit to Mother for Father's "Dissipation of Marital Estate" in the amount of $51,682.00. The Order listed the following calculation for the amount of credit due to Mother for Father's dissipation of marital assets:

| | | |
|---|---|---|
| 1. | Excessive traveling | $15,996.37 |
| 2. | Wasted money on tickets to sporting events | $9,075.52 |
| 3. | Computer games | $7,797.12 |
| 4. | GI Bill benefits | $70,495.00 |
| | **Total:** | **$103,364.10** |
| | X 50%    = | **$51,682.00** |

A footnote to the "GI Bill benefits" total states "GI Bill benefits is [sic] a marital asset that is transferable to a spouse or children, yet was not disclosed by [Father] in his Asset and Debt statements."

On November 2, 2016, the Family Court entered the Divorce Decree that, *inter alia*, apportioned extracurricular costs equally between the parties and awarded Mother $51,682.00 for Father's dissipation of the marital estate.

On November 22, 2016, Father timely appealed.

On February 23, 2017, the Family Court entered its "Findings of Fact and Conclusions of Law" (**FOFs/COLs**). The FOFs and COLs relevant to this appeal include:

> **FOF 40**  Dissipation of Martial Estate Owed by [Father]
> The Court finds that 1) charging [Father] for martial waste during the divorce is fair and equitable; 2) the divorce commenced on December 19, 2011, the date of filing of the Complaint for Divorce; 3) the date of conclusion of the evidentiary part of trial (DOCOEPOT) was February 9, 2016; 4) [Mother's] evidence is credible as to the value of the dissipated assets from December 2013 through August 2015; 5) [Father's] dissipation of marital assets qualifies as a chargeable reduction in the division of marital assets; and 6) [Father's] expenditures were not ordinary and customary household and living expenses.

4

Therefore, the amount of the credit due [to Mother] for [Father's] dissipation of marital assets is $51,682.00, fifty percent (50%) of the total amount, which is the sum of the following:

| | | |
|---|---|---|
| (1) Excessive traveling | | $15,996.37 |
| (2) Wasted money on tickets to sporting events | | $9,075.52 |
| (3) Computer games | | $7,797.12 |
| (4) GI Bill benefits | | $70,495.00 |
| | Total: | $103,364.10 |
| | X 50% = | $51,682.00 |

. . . .

**COL 6** Extra-Curricular Activities.

[Mother] shall keep [Father] informed of the children's extra-curricular activities so that [Father] may meaningful[ly] participate in the children's activities. [Father's] participation in the children's extra-curricular activities are [sic] in the best interest of the children. Any fees and costs incurred so that the children may participate in activities shall be shared equally by the parties.

All of the foregoing shall be subject to the further order of the Family Court.

. . . .

**COL 42** Equalization of Property Division

[. . . .]

Plaintiff is entitled to the following credit:

[ . . .]

Credit For Dissipation of Marital Estate $51,682.00

The Family Court's COL 43(2), also relevant to the instant appeal, is identical to FOF 40.

## II. Standards of Review

### A. Family Court Decisions

Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decision on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012) (quoting Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted)).

5

> It is well established that a family court abuses its discretion where "(1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason."

Id. at 155-56, 276 P.3d at 724-25 (emphasis omitted) (quoting Tougas v. Tougas, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994) overruled on other grounds by Gonsalves v. Gonsalves, 91 Hawai'i 446, 984 P.2d 1272 (App. 1999)).

### B. Property Division

Hawaii's appellate courts "review the family court's final division and distribution of the estate of the parties under the abuse of discretion standard, in view of the factors set forth in [Hawaii Revised Statues (**HRS**)] § 580-47 and partnership principles." Tougas, 76 Hawai'i at 26, 868 P.2d at 444 (footnote omitted) (quoting Gussin v. Gussin, 73 Haw. 470, 486, 836 P.2d 484, 492 (1992)).

### C. Findings of Fact and Conclusions of Law

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

> > On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are [ ]not binding upon an appellate court and are freely reviewable for their correctness.

Hamilton v. Hamilton, 138 Hawai'i 185, 197, 378 P.3d 901, 913 (2016) (quoting Kakinami, 127 Hawai'i at 136, 276 P.3d at 705 (citation omitted)).

## III. Discussion

### A. Marital Waste

In his first point of error, Father challenges FOF 40 and COLs 42 and 43(2), asserting that the Family Court erred in finding that he dissipated the marital estate, charging him with marital waste, and awarding Mother a credit based on the

dissipation of marital assets. Specifically, Father argues that (1) "the monies expended by [Father] were from accounts that the parties had already agreed in [the 1/25/16 Stipulated Order] were his sole and separate property and that there would be no offsets from the bank accounts" and (2) Mother has no legal right to any share in Father's Post-9/11 GI Bill benefits since they are not considered marital assets.

### 1. Alleged Marital Separate Property

The parties do not dispute whether their solely-owned bank accounts were marital property prior to the 1/25/16 Stipulated Order, and Father does not challenge FOF 40 or COLs 42 and 43(2) to the extent that he expended the stated sums or that he made the stated purchases. Rather, all of Father's relevant arguments hinge on the premise that no dissipation of marital assets occurred "because the parties stipulated pre-trial that the amounts expended by [Father] were not part of the martial estate, but were his sole and separate property" by virtue of the 1/25/16 Stipulated Order. Mother's Answering Brief makes no argument regarding the non-GI Bill expenditures. We agree with Father.

"[S]pouses may expressly contract for a different division of marital partnership property, and the family court must enforce all valid and enforceable agreements with regard to marital property division." Balogh v. Balogh, 134 Hawai'i 29, 39, 332 P.3d 631, 641 (2014) (footnote omitted) (citing HRS § 572-22 (2006)). "In addition, spouses may exclude certain assets from the marital partnership entirely, thereby segregating those assets as marital separate property[,]" which can include that agreed upon by valid contract. Id. (citing Kakinami, 127 Hawai'i at 138-39, 276 P.3d at 707-08).

As quoted, *supra*, Section 9 of the 1/25/16 Stipulated Order provides:

> 9. Bank Accounts. The parties have no joint bank accounts. Any and all bank accounts and credit union accounts maintained in the sole and separate name of the [Mother] or [Father] shall become the sole and separate property of the

7

> respective party who so maintains the account. There shall be no offsets for values of sole and separate bank accounts awarded to the parties.

The Order additionally states that "it is intended that this Stipulated Order will be subsumed and incorporated into the final divorce decree or ruling of this Court after trial."

"Waste of marital assets is chargeable to a divorcing party when, during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction." Chen v. Hoeflinger, 127 Hawai'i 346, 358, 279 P.3d 11, 23 (App. 2012) (emphasis added) (citation omitted). The parties do not contest the validity of the 1/25/16 Stipulated Order, and we therefore conclude that the Order served to designate the parties' sole and separate bank accounts as marital separate property, thereby shielding Father's expenditures from Mother's waste claim. See also Hamilton 138 Hawai'i at 200, 378 P.3d at 916 (holding that marital separate property is, *inter alia*, "[a]ll property that was excluded from the marital partnership by a valid contract[.]") (citation omitted); Kakinami, 127 Hawai'i at 142, 276 P.3d at 711 ("Marital Separate Property is property that has been excluded from the marital partnership, and thus, not subject to division. Put another way, upon dissolution of the marital partnership, property properly classified as Marital Separate Property remains with the owner of that property.").

Therefore, the Family Court's FOF 40, COL 42, and COL 43(2) were in error.

### 2. Post-9/11 GI Bill Benefits

In its Decision and Order Re Trial, the Family Court stated, without citation to any authority, that "GI Bill benefits is [sic] a marital asset[.]"

Father argues that his Post-9/11 GI Bill benefits are not includible in the marital estate because they are V.A.

8

benefits, rather than military retirement or disability benefits, and thus cannot be considered in marital waste calculations. In support of his argument, Father cites 38 U.S.C. § 5301 (2003) which provides, in relevant part:

> (a)(1) Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under chapter 19 of this title, or of servicemen's indemnity.

(Emphasis added).[3] Father also cites several cases which affirm the non-divisibilty of Title 38 Veterans' Benefits in divorce proceedings. See Ex parte Burson, 615 S.W.2d 192, 194 (Tex. 1981) (holding that husband forwent his military disability benefits in order to receive Title 38 Veterans' Benefits, which were "not divisible or assignable" after entry of the divorce decree because they "are not property.") (footnote and citations omitted); Rickman v. Rickman, 605 P.2d 909, 911 (Ariz. Ct. App. 1980) (holding that "[v]eterans' benefits are mere gratuities and not rights" and that monthly disability payments from the V.A. to appellant, a veteran seeking divorce, "did not constitute an earned property right which accrued to him by reason of his years of service in the military, but were for personal injury or

---

[3] Father also cites Neville v. Blitz, 122 So.3d 70 (Miss. 2013), which provides a useful summary of the Post-9/11 GI Bill benefits:

> [t]he Post-9/11 Veterans Educational Assistance Act of 2008, known as the Post-9/11 GI Bill, went into effect August 1, 2009. See 38 U.S.C. § 3301, et seq. (2011)[.] The benefits provided by the Post-9/11 GI Bill include the cost of college tuition and fees, a stipend for books each semester, and a monthly housing stipend. 38 U.S.C. § 3313(c)(1) (2011).

Id. at 73.

disease for service-connected disability."); see also Hisquierdo v. Hisquierdo, 439 U.S. 572, 576, 583-88 (1979) (holding that federal law barring annuities created by the Railroad Retirement Act of 1974 from being "assignable or . . . subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever," precluded such annuities from becoming community property subject to division in divorce proceedings), superseded by statute, Pub. L. 98-76, Title IV, § 419(a), as recognized in Rodrigue v. Rodrigue, 55 F.Supp.2d 534 (E.D.La. 1999), rev'd on other grounds, Rodrigue v. Rodrigue, 218 F.3d 432 (5th Cir. 2000).

Therefore, the Family Court's inclusion of Father's Post-9/11 GI Benefits in the marital waste calculation is in error.

## B. Extracurricular Activities

In his second point of error, Father argues that the Family Court erred in entering COL 6, which stated that he will be equally responsible for the children's extracurricular activities fees and costs, because there was insufficient evidence, argument, analysis, or necessary predicate findings to support the COL.

In support of his argument, Father cites this court's decision in Jacoby v. Jacoby, 134 Hawai'i 431, 341 P.3d 1231 (App. 2014), holding that the family court abused its discretion by ordering via a Divorce Decree provision that a father be solely responsible for the costs incurred in connection with his children's extracurricular activities. In Jacoby we noted, *inter alia*, that it was unclear what "extracurricular activities" were intended to be included in the family court's provision, and there was no explanation why such activities were not adequately supported by child support or were within the parties' discretion to fund from their other resources. Id. at 454, 341 P.3d at 1254.

Similar to <u>Jacoby</u>, COL 6 in this case neither specifies the extracurricular activities intended to be included,[4] nor explains why such costs could not be adequately covered by child support or the parties' other resources. Based on the foregoing, we conclude that the Family Court erred in entering COL 6 to the extent it states "[a]ny fees and costs incurred so that the children may participate in activities shall be shared equally by the parties." The parties may address this issue further on remand.

## IV. Conclusion

The Family Court of the First Circuit's November 2, 2016 "Decree Granting Absolute Divorce and Awarding Child Custody" is vacated, in part, with regard to marital waste and the apportionment of extracurricular activities costs. The case is remanded for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, November 25, 2019.

On the briefs:

Rebecca A. Copeland,
for Defendant-Appellant.

Ronald P. Tongg,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

---

[4] Mother's written closing arguments list bowling, volleyball, dance, and gymnastics as the children's current extracurricular activities, and three of her exhibits admitted at trial contain receipts pertaining to some of these activities. However, Mother's written closing argument that "[p]articipation in extra-curricular activities is in the best interests of both children such that the parties should share equally in the cost thereof" does not preclude the possibility of participation in other unspecified activities.