**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000509
26-MAY-2023
09:36 AM
Dkt. 149 MO**

NOS. CAAP-21-0000509, CAAP-21-0000521, CAAP-21-0000522,
CAAP-21-0000523, AND CAAP-21-0000524

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

NO. CAAP-21-0000509
IN THE INTEREST OF LI
(FC-S NO. 18-00034)

NO. CAAP-21-0000521
IN THE MATTER OF THE GUARDIANSHIP OF LI
(FC-G NO. 18-1-6221)

NO. CAAP-21-0000522
IN THE MATTER OF THE GUARDIANSHIP OF LI
(FC-G NO. 20-1-6243)

NO. CAAP-21-0000523
IN THE MATTER OF ADOPTION OF LI
(FC-A NO. 20-1-6175)

NO. CAAP-21-0000524
IN THE MATTER OF ADOPTION OF LI
(FC-A NO. 21-1-6112)

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Hiraoka and McCullen, JJ.)

This case involves competing petitions for the adoption
of a child which were filed by the child's paternal aunt and by

the child's resource caregiver.  In this consolidated appeal, Appellant/Cross-Appellee Mother (**Mother**) appeals and Intervenor/Appellee-Cross-Appellant EI (**Paternal Aunt**) cross-appeals from the "Orders Concerning Child Protective Act" entered by the Family Court of the First Circuit (**Family Court**)[1] on September 2, 2021.[2]  The Family Court determined it is in LI (**Child's**) best interest to be adopted by Petitioner/Resource Caregiver-Appellee IC (**RCG**).  On October 18, 2021, the Family Court entered Findings of Fact and Conclusions of Law (**FOFs/COLs**) for the contested placement trial.

On appeal, Mother contends that under Hawaii Revised Statutes (**HRS**) § 587A-15(c)(2) (2018) she had the right to consent or agree to Paternal Aunt's guardianship and/or adoption of Child prior to the termination of Mother's parental rights. Mother asserts she agreed to guardianship and then adoption of Child by Paternal Aunt, and argues the Family Court should have considered Child's permanent placement before terminating Mother's parental rights.  Additionally Mother contends RCG and/or Appellee-Guardian Ad Litem (**GAL**) failed to meet their burden to show by a preponderance of the evidence that placement of Child with RCG is in Child's best interest.  Relatedly, Mother challenges FOFs 183 and 225, and COLs 16, 20-23, 29, 30, 34, 35, 37, and 38.[3]

_____

[1]  The Honorable Andrew T. Park presided.

[2]  This court granted consolidation by order filed December 15, 2021, and the appeals were consolidated under CAAP-21-0000509.  The remaining appeals arise from Paternal Aunt's appeal of the following orders entered by the Family Court on September 10, 2021: (1) CAAP-21-521 arises from the Order Denying Petition for Appointment of Guardian of a Minor in FC-G No.18-1-6221; (2) CAAP-21-522 arises from the Order Denying Petition for Appointment of Guardian of a Minor in FC-G No.20-1-6243; (3) CAAP-21-523 arises from the Order Denying Petition for Adoption in FC-A No.20-1-6175; and (4) CAAP-21-524 arises from the Findings and Order Setting Further Hearing in FC-A No.21-1-6112.

[3]  Mother also challenges FOFs 50, 55, 56, 135-37, 148, 150, 351, 377, 390, 391, 395, 398-401, 403, 405, 406, 409-12, 414-17, 421, and 424-30. Mother asserts her objection to the FOFs she lists is "based on the arguments as set forth in her Opening Brief[,]" or based on the trial testimony of the witnesses "generally". However, Mother presents no discernible argument as to

(continued...)

On cross-appeal, Paternal Aunt contends the Family Court erred in: (1) failing to consider ethnicity and culture as factors in its best interest of the child analysis and failing to treat kinship as a substantial factor; (2) untimely considering Paternal Aunt's petitions for guardianship and adoption; and (3) granting RCG's request for a continuance of the permanent placement trial on January 5, 2021.[4]

---

[3](...continued)
why these FOFs are clearly erroneous and does not refer to these challenged FOFs in her arguments section. This court is "not obliged to address matters for which the appellants have failed to present discernible arguments." Hussey v. Say, 139 Hawaiʻi 181, 191, 384 P.3d 1282, 1292 (2016) (citation omitted).

[4]  Paternal Aunt also challenges a multitude of FOFs as recitations of testimony that should be vacated because they are not findings of fact. Specifically, Paternal Aunt challenges FOFs 78-82, 86-88, 91, 110, 130, 134-36, 138-39, 143, 147-52, 167-73, 175-79, 181-82, 185-90, 195, 197, 200-201, 203-15, 217-24, 226, 233, 237-39, 241-43, 246-47, 251, 253-56, 263-65, 267-78, 280-81, 289, 307-14, 316-18, 322-25, 328, 330, 335-36, 340, 343-44, 346-53, 357, 360-69, 371-76, and 379-83.  Paternal Aunt, citing In re Doe, 96 Hawaiʻi 255, 259, 30 P.3d 269, 273 (App. 2001), challenges these FOFs as mere "recitations of testimony," and argues they should be vacated.  We agree that the Family Court's statement of the evidence, by itself, is not a finding of fact. See id.

However, as we explained in Doe, although we do not recommend doing it this way, we conclude that FOFs 93, 117, 140, 153, 183, 225, 279, 292, 354, 384, which state the Family Court's determinations as to credibility and resolve conflicting evidence, validly convert the recitations of testimony into FOFs. See id. (holding that the family court's findings which in effect state that the court found the stated evidence to be credible evidence of the facts validly convert statements of the evidence into FOFs); In re Adoption of HA, 143 Hawaiʻi 64, 77, 422 P.3d 642, 655 (App. 2017) (explaining that findings of fact which primarily contain recitals of witness testimony with no actual statement of the court's determination as to credibility, weight, or resolution of conflicting evidence do not properly state findings).

Paternal Aunt also challenges FOFs 390, 398-403, 406, 408-17, 421, 424, 427-29 and COLs 8, 12, 13, 20-22, 25, 29, 30, and 34 as erroneous or unsupported by the evidence but fails to provide any corresponding argument regarding these FOFs and COLs.  Instead, Paternal Aunt appears to challenge these FOFs and COLs generally in the context of her challenge to the Family Court's best interest of the child analysis. We address these FOFs and COLs in considering her arguments regarding the best interest of the child.

Paternal Aunt further challenges FOFs 109, 110, 370, 377, and 378 as clearly erroneous and provides some argument to support her assertion of error. However, based on the record, these FOFs are either not clearly erroneous or they reflect the testimony of the witnesses and are thus not clearly erroneous. See In re Doe, 95 Hawaiʻi at 183, 20 P.3d 616, 623 (2001).

Similarly, Paternal Aunt argues that FOFs 425, 426, and 430 are erroneous because they are actually COLs.  However, "[a] conclusion of law is not rendered immune from review because labelled [sic] a finding of fact."
(continued...)

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's and Paternal Aunt's points of error as follows, and affirm.

## I.  Background

The following factual and procedural background is taken from the record and the Family Court's unchallenged FOFs which are binding on appeal.[5]

On February 18, 2018, Appellee/Cross-Appellee Department of Human Services (**DHS**) assumed placement responsibility of Child via police protective custody because Mother had been arrested in connection with the death of Child's biological father (**Father**) and Child was left with no legal caretaker.  On February 21, 2018, DHS filed a petition for temporary foster custody of Child, which initiated the underlying case, FC-S No.18-00034.  At that time, Child was a little over two and a half years old.

On April 9, 2018, Child entered Foster Care and was moved to the home of RCG.  At the time of placement, RCG, along with her long-time partner (**RCG's Partner**), were provisionally approved as resource caregivers and Child remained with RCG throughout the proceedings.[6]

In September 2018, Paternal Aunt, a California resident, filed her Petition for Appointment of a Guardian of a

---

[4](...continued)
Molokoa Village Dev. Co. v. Kauai Elec. Co., 60 Haw. 582, 595-96, 593 P.2d 375, 384 (1979) (citing 9 Wright & Miller, Federal Practice and Procedure: Civil § 2588 (1971)).  Paternal Aunt fails to provide any arguments regarding these FOFs and thus we decline to address them.

Finally, Paternal Aunt challenges all FOFs relating to expert testimony as "incomplete" and FOFs 112 and 392 as vague.  However, the trial judge is only required to make brief, definite, pertinent findings.  State v. Ramos-Saunders, 135 Hawaiʻi 299, 304-05, 349 P.3d 406, 411-12 (App. 2015).

[5]  Unchallenged findings of fact are binding on appeal.  In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).

[6]  RCG and RCG's Partner live together with RCG's four biological children, three of whom were fathered by RCG's Partner and one of whom is from a prior relationship.

Minor in the Family Court in FC-G No.18-1-6221.  On April 18, 2019, an ICPC[7] home study was completed and Paternal Aunt's home in California was approved as a potential placement for Child.

In September 2020, RCG filed a Guardianship Petition seeking guardianship over Child in FC-G No.20-1-6243.  On December 24, 2020, Paternal Aunt filed a Petition for Adoption seeking to adopt Child in FC-A No.20-1-6175.

On March 3, 2021, Mother stipulated to the termination of her parental rights and the Family Court ruled that Mother would remain a party and would be permitted to participate in the contested placement trial.  On May 13, 2021, RCG filed a Petition for Adoption seeking to adopt Child in FC-A No.21-1-6112.

After a seven day trial regarding Child's permanent placement, held on May 25-27, June 1, June 23, and July 19-20, 2021, the Family Court entered its "Orders Concerning Child Protective Act" on September 2, 2021.  The Family Court determined, *inter alia*, that RCG proved by a preponderance of the evidence that DHS's recommendation to place Child with Paternal Aunt was not in the best interest of Child; it is in Child's best interest to be adopted by RCG; and it is not in Child's best interest to be removed from Child's current placement with RCG to be placed with Paternal Aunt in California.[8]

On October 18, 2021, the Family Court entered its FOFs/COLs, consisting of four-hundred and thirty FOFs and thirty-eight COLs.

Both Mother and Paternal Aunt appealed.

---

[7]  ICPC is an acronym for the Interstate Compact on Placement of Children.  ICPC provides for the legal transport of a child between states in a foster or adoption placement. See HRS Chapter 350E (2015).

[8]  The Family Court made numerous findings on why adoption by RCG was in Child's best interest.  The Family Court's unchallenged FOFs in its analysis of the best interest of Child provide that, *inter alia*, Child has been in RCG's care for more than three years and has thrived in RCG's care; Child is strongly attached to RCG and RCG's Partner, they are strongly bonded to Child, and they are Child's psychological parents; Child is also strongly bonded to RCG's children and views them as her brothers; and both RCG and RCG's Partner have extended family living in Hawaiʻi and Child has relationships on both sides of their family that would be lost if she were to move to California. Further, although challenged by Mother, the Family Court found that RCG and RCG's Partner have worked to maintain Child's connections with her family and RCG credibly testified she would do so in the future.

## II.  Standards of Review

### A. Family Court Decisions

"The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." Kakinami v. Kakinami, 127 Hawaiʻi 126, 136, 276 P.3d 695, 705 (2012) (citation omitted). "Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason." In re Adoption of HA, 143 Hawaiʻi at 74, 422 P.3d at 652.

Additionally, "[t]he family court's determination of what is or is not in a child's best interests is reviewed on appeal for clear error." Id. at 75, 422 P.3d at 653 (citation omitted). "Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." Id. (citation omitted).

### B.  Findings of Fact and Conclusions of Law

The family court's findings of fact are reviewed under the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

The family court's conclusions of law are reviewed de novo.

Balogh v. Balogh, 134 Hawaiʻi 29, 38, 332 P.3d 631, 640 (2014) (quoting Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 706) (internal quotation marks omitted).

### C.  Motions to Continue

"We review a trial court's decision to grant or deny a motion to continue for an abuse of discretion." Onaka v. Onaka, 112 Hawaiʻi 374, 378, 146 P.3d 89, 93 (2006).

### III.  Discussion

### A.  Mother's Rights Were Not Violated

Mother and Paternal Aunt contend the Family Court should have granted Paternal Aunt's petition for guardianship and/or adoption because Mother consented prior to the termination of her parental rights.  We disagree.

Mother contends she had the fundamental right to agree to Paternal Aunt's guardianship of Child under HRS § 560:5-204. HRS § 560:5-204 (2018) provides, in pertinent part:

> (b) The court <u>may appoint a guardian for a minor if the court finds the appointment is in the **minor's best interest**, and</u>:
>
> > (1) <u>The parents consent</u>;
> > (2) All parental rights have been terminated; or
> > (3) The parents are unwilling or unable to exercise their parental rights.

(Emphases added.)

Mother also contends she had the right to consent to adoption under HRS § 587A-15(c)(2), which provides,

> (c) Unless otherwise provided in this section or as otherwise ordered by the court, a child's family shall retain the following rights and responsibilities <u>after a transfer of temporary foster custody or foster custody</u>, to the extent that the family possessed the rights and responsibilities prior to the transfer of temporary foster custody or foster custody:
>
> . . .
>
> (2) <u>The right to consent to adoption</u>, to marriage, or to major medical or psychological care or treatment[.]

(Emphases added.)

Adoption proceedings are governed by HRS Chapter 578. In re Adoption of HA, 143 Hawaiʻi at 75, 422 P.3d at 653.  HRS § 578-8(a) (Supp. 2019) sets forth requirements for entering an adoption decree which provides, in pertinent part:

> (a) No decree of adoption shall be entered unless a hearing has been held . . . . After considering the petition and any evidence as the petitioners and any other properly interested person may wish to present, <u>the court may enter a decree of adoption if it is satisfied that</u>:
>
> . . .
>
> (4) <u>The adoption will be for the **best interests of the individual**</u>[.]

(Emphases added.)

7

Here, Mother and Paternal Aunt appear to assert that Mother's right to consent to guardianship and/or adoption means that the Family Court was required to grant Paternal Aunt's petitions.  However, parental consent is not the sole factor, and the Family Court was required to consider the best interest of Child before granting guardianship under HRS § 560:5-204 or adoption under HRS § 578-8(a).[9]  Mother and Paternal Aunt present no argument as to how consideration of Paternal Aunt's petitions prior to the termination of Mother's parental rights would have affected or changed the Family Court's best interest of the child analysis.  Moreover, although Mother's parental rights had been terminated by stipulation in March 2021, the Family Court ruled that Mother would remain a party and would be permitted to participate in the contested placement trial.  The trial was held starting in May 2021, and Mother was represented by counsel and participated in the trial.

Finally, Mother and Paternal Aunt also contend the Family Court did not timely consider Paternal Aunt's petition for guardianship given Mother's consent to guardianship in 2018. This argument is without merit.  Based on our review of the record, Mother did not give her consent to Paternal Aunt's guardianship of Child in 2018.  Instead, Mother wanted Child placed with a maternal family friend who resided in California. The Family Court's uncontested FOF 31 states, "DHS requested an ICPC home study for a non-relative family friend of Mother's who lived in California, but the request was denied on January 23, 2019, when that friend indicated that she was no longer able to care for [Child]."  The Family Court's uncontested FOF 100 states

_____

[9]  To the extent Mother contends the Family Court erred procedurally by terminating her parental rights prior to considering Child's adoption, we note that Mother did not appeal the Order Terminating Parental Rights entered by the Family Court on March 31, 2021. Mother stipulated to the termination of her parental rights and the Order Terminating Parental Rights states, "[Mother] intelligently, knowingly and voluntarily stipulated to permanent custody and the permanent plan dated March 25, 2020[.]" Moreover, Mother fails to cite to any authority to support her contention that the Family Court was required to first make an adoption or guardianship determination prior to the termination of Mother's parental rights.

"Mother was not agreeable to guardianship for Paternal Aunt until after the friend withdrew from consideration."

Paternal Aunt also argues that the Family Court should have granted her guardianship petition in 2019, after the ICPC was approved for her home because Mother consented to Paternal Aunt's guardianship.  As explained above, Mother's consent alone was insufficient for granting guardianship.  Moreover, Mother did not consent to Paternal Aunt's guardianship in 2019, and it was not until a hearing on June 18, 2020, that Mother consented to Paternal Aunt's permanent guardianship.  Thereafter, Paternal Aunt filed a petition for adoption with Mother's consent on December 24, 2020.  The Family Court set the permanent placement trial to consider guardianship and/or adoption the following month in January 2021.  Subsequently, to address an expert report received in December 2020, the court continued the trial to May 25, 2021, less than six months after the petition for adoption was filed.

Given the record in this case, the Family Court did not violate Mother's rights, and further, the court's consideration of Child's permanent placement was not untimely.

## B.  Best Interest of Child

Mother and Paternal Aunt assert the Family Court erred in determining Child's adoption by RCG is in the best interest of the child.  Mother and Parental Aunt disagree with the Family Court's credibility determinations and the weight of the evidence.

Specifically, Mother contends the evidence presented during the contested placement trial showed that it is in Child's best interest to be adopted by Paternal Aunt.  In support of her argument, Mother cites the expert testimony regarding Child's placement by Dr. Irada Wattanavitukul (**Dr. Wattanavitukul**) and Dr. Steven Choy (**Dr. Choy**).[10]  Similarly, Paternal Aunt argues

---

[10]  On August 5, 2019, Child began therapy with Family Programs Hawaii. Her regular therapist was Dr. Wattanavitukul, who was supervised by Dr. Choy.

the Family Court blatantly abused its discretion by "disregard[ing] the great weight of expert testimony in favor of kin[.]"  Paternal Aunt also argues the Family court gave kinship, ethnicity and culture inadequate weight in determining the best interest of Child.

However, the Family Court found in FOFs 183 and 225 that Dr. Wattanavitukul and Dr. Choy's testimony regarding Child's placement with Paternal Aunt and the effect of such placement on Child were not credible.[11]  The Family Court accorded weight to certain witnesses over Dr. Wattanavitukul and Dr. Choy, including Michelle Moorhead (**Moorhead**), who had been Child's GAL from the beginning of the case and who supported Child's adoption with RCG at the placement trial.[12]

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact."  Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).  To the extent Mother and Paternal

---

[11]  In FOF 183, the Family Court found:

> [w]hile the testimony of Dr. WATTANAVITUKUL was credible in part, the opinions that she offered were not credible to the court based on all the evidence in the case and the Court did not find her opinions regarding a potential placement with Paternal Aunt or the effect of such a placement on [Child] to be credible.

(Emphasis added.)

Similarly, in FOF 225, the Family Court found,

> [b]ased upon the evidence in the case and the conflicts between the testimony of Dr. WATTANAVITUKUL and Dr. CHOY regarding the preparation of the December 30, 2020, report, the Court did not find Dr. CHOY's opinions regarding placement of [Child] with Paternal Aunt or the effect of such a placement on [Child] to be credible. The Court did not find his opinions regarding "ethnic identity" to be credible.

(Emphasis added.)

[12]  After the appeals to this court, Michelle Moorhead no longer serves as GAL because she no longer works with the Legal Aid Society, and a new GAL was substituted for Child.

Aunt's arguments challenge the Family Court's FOFs regarding credibility and the weight of the evidence, these issues are within the province of the Family Court and we will not review them.[13]

With regard to Paternal Aunt's argument that the Family Court failed to consider ethnicity, culture and religion as factors and only considered "kinship," the Family Court considered "all the evidence presented in the case as well as the information contained in the files and pleadings of the case." The Family Court's FOFs also refer to Paternal Aunt's testimony which the Family Court found credible, including that Paternal Aunt believes it is important for Child to learn to speak Spanish because Paternal Aunt believes that other children will make fun of Child for being unable to speak Spanish.  Paternal Aunt also testified that she believes Child should be raised as a Catholic because that is Child's religion of origin.  Therefore, the Family Court considered Child's ethnicity, culture and religion

---

[13]  Mother and Paternal Aunt's primary argument is that the expert opinions of Dr. Choy and Dr. Wattanavitukul in support of adoption by Paternal Aunt clearly outweighed any evidence in favor of adoption by RCG.  However, the Family Court expressly did not find Dr. Choy and Dr. Wattanavitukul's testimonies regarding potential placement with Paternal Aunt, or Dr. Choy's opinions on "ethnic identity," to be credible.  The Family Court found, *inter alia*, that: Dr. Choy attended some of Child's sessions with Dr. Wattanavitukul in person and sometimes only viewed videotaped sessions; Dr. Choy never visited RCG's home or interviewed RCG's Partner, never met RCG's children, had not made an evaluation of RCG's home, and never spoke with any of Child's teachers; and Paternal Aunt participated in some of Child's sessions with Dr. Wattanavitukul, but RCG and RCG's Partner were not invited to Child's sessions with Dr. Wattanavitukul because they were not family.  The Family Court found it is inappropriate for a child's therapist to make a placement recommendation when they have not investigated both potential placements.  The Family Court also noted the conflicting testimonies by Dr. Choy and Dr. Wattanavitukul regarding who prepared the December 30, 2020 report as a factor in determining Dr. Choy's credibility.  Dr. Wattanavitukul testified that she wrote the December 30, 2020 report and the changes Dr. Choy made were just corrections of her grammar and word choice.  In contrast, Dr. Choy testified that he wrote the December 30, 2020 report and Dr. Wattanavitukul either misunderstood or lied about writing the report.

The Family Court found that Child's GAL, Moorhead, was credible. Moorhead testified that she considered placement with Paternal Aunt but recommended it would be in Child's best interest to stay in her current placement and be adopted by RCG.  Moorhead testified that she had observed Child and Parental Aunt interact in-person on several occasions, including the first supervised visit around July 2019, and in Parent Child Interactive Therapy sessions.

in determining permanent placement and the best interest of
Child.

Further, in arguing that kinship should be given
substantial weight, Paternal Aunt asks this court to overrule the
Hawaiʻi Supreme Court's holding in In re AS, that there is no
statutory preference for relatives in permanent placement cases
under HRS Chapter 587A.[14]  In re AS, 132 Hawaiʻi 368, 387, 322
P.3d 263, 282 (2014) (stating "[t]here being no state statutory
relative preference in permanent placement cases, we disapprove
of DHS's Policy Directives PA Nos. 2005-5, -7, and -8, which
directed the CWSB to give preference to relatives in determining
a foster child's permanent placement, to the extent that those
policies imply that DHS may do so without regard to the child's
best interests, which are always paramount." (emphasis omitted)).
We are bound by the Hawaiʻi Supreme Court's ruling in In re AS
and cannot overrule it.

### C. The Family Court Did Not Abuse Its Discretion In Continuing the Contested Placement Trial

Finally, Paternal Aunt contends the Family Court abused
its discretion by granting RCG a continuance of the contested
placement trial on January 5, 2021, which was scheduled to begin
that day.  We disagree.

---

[14]  Paternal Aunt further argues that children have a fundamental
liberty interest to a familial preference in placement and the right for trial
courts to consider the child's ethnic, cultural, and religious heritage in
permanent placement decisions and have such considerations given substantial
weight.  GAL contends, *inter alia*, that Paternal Aunt failed to raise
constitutional issues in the Family Court.  Thus, Paternal Aunt has waived her
arguments on appeal. Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort
Co., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in
the trial court are ordinarily deemed waived on appeal.").

To the extent Paternal Aunt argues ethnicity, culture and kinship should
be given more weight in determining permanent placement, the Hawaiʻi Supreme
Court has repeatedly affirmed that "the best interests of the child standard
[is] paramount when considering the issue of custody.  In so doing, the family
court is granted broad discretion to weigh the various factors involved, with
no single factor being given presumptive paramount weight, in determining
whether the standard has been met."  Fisher, 111 Hawaiʻi at 50, 137 P.3d at
364.

On December 30, 2020, Dr. Choy submitted his Psychological Treatment Report six days before the trial was scheduled to begin on January 5, 2021.  The report stated that, since the last progress report dated June 5, 2020, "[Child] and her biological family have a very strong cultural connection" which "has become part of [Child]'s identity and this factor needs to be a primary consideration in making decisions about her permanent placement."

On January 5, 2021, RCG requested a continuance to obtain further discovery, and consult with and perhaps retain an expert because Dr. Choy's report "represent[ed] expert opinions that are substantially new and different from anything that we've seen in the case."  Over the objections of DHS, Mother, Paternal Aunt, and GAL, the Family Court granted the continuance.  The Family Court found good cause for the delay in balancing the period of delay that would be caused by the granting of a continuance and the reason for the request.  Moreover, the Family Court noted that although trial was set to start on January 5, 2021, trial was not scheduled to conclude until March, and thus the continuance would not delay the conclusion of the trial by a significant amount.[15]  The record shows that the placement trial was initially anticipated to start in early January 2021, take three days, and end on March 3, 2021.  The actual trial started at the end of May 2021, took seven days, and ended on July 20, 2021.

Paternal Aunt fails to provide an argument that the Family Court's grant of the continuance "disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason."  In re Adoption of HA, 143 Hawaiʻi at 74, 422 P.3d at 652.

---

[15]  The initial trial dates were January 5, January 6, and March 3, 2021.

Given the record, the Family Court did not abuse its discretion in granting RCG's request for a continuance of the trial.

### III.  Conclusion

For the reasons discussed above, we affirm the following orders entered by the Family Court of the First Circuit:

(1) the Orders Concerning Child Protective Act entered on September 2, 2021;

(2) the Order Denying Petition for Appointment of Guardian of a Minor in FC-G No.18-1-6221 entered on September 10, 2021;

(3) the Order Denying Petition for Appointment of Guardian of a Minor in FC-G No.20-1-6243 entered on September 10, 2021;

(4) the Order Denying Petition for Adoption in FC-A No.20-1-6175 entered on September 10, 2021; and

(5) the Findings and Order Setting Further Hearing in FC-A No.21-1-6112 entered on September 10, 2021.

DATED:  Honolulu, Hawaiʻi, May 26, 2023.


On the briefs:

Rebecca S. Lester,
for Appellant/Cross-Appellee

Kai Lawrence,
for Intervenor/Appellee-Cross-Appellant

Emily M. Hills,
Legal Aid Society of Hawaiʻi
for Appellee-Guardian Ad Litem

Francis T. O'Brien,
for Intervenor-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge